DAVID D. WITHERS, PLAINTIFF IN ERROR, *v.* RANSOM BUCKLEY, DANIEL WILSON, NEWTON HUFF, HUGH R. DAVIS, DOUGLAS H. COOPER, CHARLES VAUGHAN, AND JAMES METCALF.

This court has no jurisdiction, under the 25th section of the judiciary act of 1789, of the question whether or not a law of a State is in opposition to the Constitution of that State.

Therefore, where it is alleged that the Constitution of a State declares that private property shall not be taken for public uses, and that the highest court of the State has sustained the validity of a law which violates this constitutional provision, this court has no power to review that decision.

The fifth article of the amendments of the Constitution of the United States was intended to prevent the Government of the United States from taking private property for public uses without just compensation, and was not intended as a restraint upon the State Governments.

A law of the State of Mississippi, for improving the navigation of a river which empties itself into the Mississippi, is not in conflict with the act of Congress providing for the admission of that State into the Union, which act guaranties the free navigation of the Mississippi river.

Being admitted upon a footing of equality with the other States, the State of Mississippi had the rightful power to change the channels or courses of rivers within the interior of the State, for purposes of internal improvement.

And, moreover, the law in question does not propose to affect the navigation of the Mississippi river, but only a small stream running into it.

THIS case was brought up from the High Court of Errors and Appeals of the State of Mississippi, by a writ of error issued under the 25th section of the judiciary act.

The case is stated in the opinion of the court.

It was argued by *Mr. Benjamin* for the plaintiff in error, and *Mr. Carlisle* for the defendants. There was also a brief filed by *Mr. Yerger* for the plaintiff in error, and by *Mr. Badger* and *Mr. Carlisle* for the defendants.

The points made on behalf of the plaintiff in error are taken from the brief of *Mr. Yerger:*

I. There is no doubt of the jurisdiction of the court of equity upon the case stated by the bill. (4 Cush. Rep., 86; 3 Wend. Rep., 636; 2 John. Ch. Rep., 165; 6 Paige's Rep., 262.)

II. Apart from any public or private nuisance, the bill alleges special injury to the complainant, which is within the principle of the above-cited decisions, and others hereinafter cited.

III. We contend that the act of 1850 is unconstitutional. First, because it provides no compensation to the complainant; and, secondly, that it is void, because prohibited by the ordinance of Congress.

1. As to its unconstitutionality. The land of complainant is on the waters of Old river and the Narrows. The water runs through it. This is not a navigable stream, according to common-law meaning of the term. But a grant of land on or bounded by such a stream as this, passes the right to the land to the middle of the stream. The use of the water also, as an incident, passes by a grant, and is as sacred a right as the land itself. (See Morgan *v.* Reading, 3 Smedes and Mar.; 2 John. Ch. Rep., 165.)

Where a grant of land is on a stream above the ebb and flow of the tide, the land passes, and the water also, subject only to the right of the public to navigate it. The use of the water is a part of the freehold. (Angel on Water-courses, pp. 1—11, 12, 13—29; Co. Litt., 4; 2 Brown Com., 142; Bullen *v.* Raynells, 2 N. Ham., 255.)

In all cases, above the ebb and flow of the tide, a right of property in the water passes with a grant of the land, and it cannot be divested or taken away without compensation, as the above authorities show.

The case from Harrington's Rep., and from 2 Peters Rep., were cases of navigable waters according to common law, as the cases show, in which case there can be no individual right to the water.

In the case in 8 Cowen, 146, the only injury to plaintiff was the temporary erection of bridges to build the pier, and that it was like materials used in building, it might be a temporary inconvenience to a neighbor, &c. (See pages 150 and 151.)

It may be said that the principle of the common law, as to streams where the tide ebbs and flows, applies to the waters of the Mississippi and the streams which flow into it.

But this was the great point, argued most laboriously, and decided by the High Court of Mississippi, in the case of Morgan *v.* Reading, 3 Sm. and Mar., 366, and numerous other authorities are against it. (See also Gardner *v.* Village of Newberry, 2 John. Ch. Rep., 165; Belknap *v.* Belknap, 2 John. Ch., 463; 3 Paige Rep., 577; 1 Dev. Rep., 121; 6 Paige Rep., 262; 4 Mason, 379.)

IV. But the ordinance of Congress also prevents the Legis-

lature from obstructing the navigation of the Mississippi and its waters. It may improve them, but it cannot obstruct, by damming up the water, or diverting it from its natural course, so as to entirely deprive its navigation. (Hutchinson's Code, 55, 57, 59.)

The case in 1 McLean's Rep. is directly in point. It decides that a private injury must be alleged; that the mere fact of a right to navigate, without using or intending to use the right, and without private injury alleged, would not do. But when the navigation was obstructed, and a private injury was alleged, equity would interfere. (See pages 343, 344, 346, 350, 351, 352, 353.)

Act of 1819, p. 106, declares Homochitto navigable, and the bill alleges that from time immemorial the grantors of plaintiff and himself used the water to supply this place, and to transport cotton and supplies to and from his place.

*Mr. Carlisle,* after commenting upon the points presented by the counsel for the plaintiff in error, presented the following view of the case:

The jurisdiction of this court is assumed upon the allegation, which the plaintiff in error is to maintain, that the statute of Mississippi is unconstitutional; because it purports to authorize the taking of private property for public use, without just compensation; and because it is repugnant to the 4th section of the act of 1st March, 1817, (3 Stat., 349.)

But the bill does not show any case of taking private property for public use. The complaint is of an apprehended consequential injury, resulting from diverting the waters of the Homochitto. No land of the complainant lies on that river. It is a navigable river, lying wholly within the territorial limits of the State of Mississippi. As such, it is subject to the power exercised by this statute; and its waters are not the subject of private property in any sense of the words "private property" in the Constitution, or in any sense which can interfere with the full exercise of the power in question, according to the discretion of the Legislature. If the plaintiff in error suffer loss through the lawful exercise of this public power, it is *damnum absque injuria.*

Least of all (it is submitted) can a party so situated restrain by injunction the exercise of such a power.

As to the supposed conflict with the act of 1817, the obvious answer is, that the statute is not to obstruct the Homochitto, but to improve its navigation. "Old river and the Narrows" are not "navigable rivers and waters," in the meaning of that act. Besides, even if they were, it is submitted that the plain-

tiff in error, upon the case made by his bill, would have no standing either at law or in equity, and has no right to call upon this court to pronounce upon the constitutionality of the statute of Mississippi.

Mr. Justice DANIEL delivered the opinion of the court.

Upon a writ of error to the High Court of Errors and Appeals of the State of Mississippi, under the authority of the 25th section of the act of Congress of September 24th, 1789, establishing the judicial courts of the United States.

The plaintiff in error, by his bill in the State court, alleged that he is the owner of a large and valuable plantation in the State of Mississippi, situated on what is called *Old river*, being a former bed of the Mississippi river, but which was cut off and made derelict by a change in the course of the Mississippi in the year 1796. That the Homochitto river, in said State, empties its waters into the said Old river at a point above, or north of, the complainant's plantation, and at low stages of the waters of the Mississippi the waters of the Homochitto pass around through the bed of Old river, and out by the narrows thereof into the Mississippi. That the flow of the waters of the Homochitto removes the deposits of mud occasioned by the overflow of the Mississippi, and thus keeps open the outlet of Old river, to the great advantage of the complainant, and of others similarly situated on Old river.

That the Legislature of Mississippi, by a law approved on the 5th of March, 1850, entitled "An act regulating and defining the powers of the commissioners of Homochitto river," appointed the defendants commissioners for the purpose of "improving the navigation of the Homochitto river, and any outlet from the same, through Old river and Buffalo bayou to the Mississippi river, and for removing any obstructions in said streams, and excavating and digging a canal unto the Buffalo from the Homochitto river, or from Old river into the Buffalo." That said canal commences on Old river below the mouth of the Homochitto river, and above the lands of the complainant, and will neither begin, pass through, nor terminate upon, the lands of the complainant. That the complainant and his grantors have ever enjoyed and used the waters flowing through his and their lands, for agricultural and domestic purposes, and for navigation in transporting their crops to markets, and receiving supplies therefrom; first when Old river was a part of the Mississippi, and since the cut-off in 1796, by the waters supplied to Old river from the Homochitto, and the back waters of the Mississippi in time of floods. That, by the said laws of Mississippi, no compensation is provided

for the injury to be done to the complainant by the diversion of
the waters of the Homochitto and Old river from the lands of
complainant, and the destruction of the navigation which said
waters afford to his plantation, because said canal or contem-
plated outlet is not to be made upon the complainant's lands.
The bill of the complainant then charged that the laws of Mis-
sissippi are invalid for having omitted to provide compensation
for the injury to be inflicted by them upon the complainant,
and are, by that omission, in violation of the fundamental laws
both of the United States and of the State of Mississippi, the
Constitutions of both of which declare that private property
shall not be taken for public use without just compensation
being made therefor; and are also in violation of the act of
Congress of March 1st, 1817, authorizing the people of Missis-
sippi to form a Constitution, and of the ordinance passed on
the 15th of August, 1817, in pursuance of the act of Congress,
both the act of Congress and ordinance providing that the
Mississippi river, and the navigable rivers leading into the
same, shall be common highways, and forever free, as well to
the inhabitants of Mississippi as to other citizens of the United
States.

To this bill a demurrer was interposed by the defendants in
error, and the cause having been carried to the High Court of
Errors and Appeals of Mississippi, by that court the demurrer
was sustained, and the bill dismissed, with costs.

The correctness or incorrectness of the decree of the High
Court of Errors and Appeals is the subject of inquiry and de-
cision now before this court. In the prosecution of our inquiry,
it is proper to disembarrass it of matters with which it has
been attempted to associate or surround it; matters having no
just connection therewith, and the introduction of which tends
only to obstruct and obscure the elucidation of truth.

Thus it is charged in the complainant's bill, that the law
authorizing the improvement of the Homochitto river is void,
because it violates the Constitution of Mississippi, by omitting
to provide a compensation for the injury which might be
done to individuals by carrying that law into effect; the
Constitution of the State having declared that private prop-
erty shall not be taken for public use without just com-
pensation being made therefor. In answer to this charge
it is sufficient to state, that this court never has, and does
not, assume the right to pronounce authoritatively upon
the wisdom or justice of the legislation of the States, when
operating upon their own citizens, and upon subjects of prop-
erty clearly within their own territory and appropriate cogni-
zance, except so far as the Constitution of the United States

expressly, or by inevitable implication, may have made it the duty of this court to control the action of the State Govern- ments. Nor has it been deemed the province of this court to abrogate or overrule the interpretation put upon their own re- spective statutes by the courts of the several States, whether such interpretation had reference to the ordinary rights of per- son or property, or to the nature and extent of the legislative powers vested by the Constitutions of the several States, and their coincidence with acts of legislation performed under the delegation of those powers. These are functions wisely and necessarily left by this court untouched in the State tribunals, the assumption of which by the Federal judiciary, as it would embrace every matter upon which the Governments of the States could operate, would, in effect, amount to the annihila- tion of those Governments. The doctrine of this court as here stated has been clearly affirmed.

In the case of Jackson *v.* Lamphire, in 3d of Peters, on page 289 of that volume, this court has declared that it "has no authority on a writ of error from a State court to declare a State law void on account of its collision with a State Consti- tution, it not being a case embraced in the judiciary act, which alone gives power to issue a writ of error to the State court." This court say, "that they will therefore refrain from express- ing any opinion on the points made by counsel in relation to the Constitution of New York." See also the ruling of this court upon the construction of State laws, in the cases of Polk's Lessee *v.* Wendal et al., in 9th Cranch, p. 87, and of the West River Bridge Company *v.* Dix et al., 6 How., p. 507. The con- formity, therefore, to the State Constitution, of the statute ap- pointing the commissioners of the Homochitto river, and pre- scribing their powers and duties, was a question appropriately belonging to the State court, and its decision of that question is not properly subject to re-examination here.

The statute of Mississippi is next assailed, on the charge that it violates the 5th article of the amendments of the Con- stitution of the United States, of which the clause in the Con- stitution of Mississippi, relied on by the plaintiff in error, is a literal transcript. In this charge is instanced another effort to confuse and obstruct the only legitimate inquiry arising on the record before us, viz: that which relates to the authority of the High Court of Errors and Appeals of Mississippi, for their decree pronounced in this cause.

To every person acquainted with the history of the Federal Government, it is familiarly known, that the ten amendments first engrafted upon the Constitution had their origin in the apprehension that in the investment of powers made by that

instrument in the Federal Government, the safety of the States and their citizens had not been sufficiently guarded. That from this apprehension arose the chief opposition shown to the adoption of the Constitution. That, in order to remove the cause of this apprehension, and to effect that security which it was feared the original instrument had failed to accomplish, twelve articles of amendment were proposed at the first session of the first Congress, and the ten first articles in the existing series of amendments were adopted and ratified by Congress and by the States, two of the twelve proposed amendments having been rejected. The amendments thus adopted were designed to be modifications of the powers vested in the Federal Government, and their language is susceptible of no other rational, literal, or verbal acceptation. In this acceptation this court has repeatedly and uniformly expounded those amendments in cases having reference to retroactive statutes, to the right of eminent domain, to the execution of plans for internal improvement; in opposition to which, the clause in the fifth article of the amendments of the Constitution has been urged. In all such cases, this court has ruled, that the clause in question was applicable to the Federal Government alone, and not to the States, except so far as it was designed for their security against Federal power. Indeed, so full, so emphatic, and conclusive, is the doctrine of this court, as promulged by the late Chief Justice Marshall, in the case of Baron *v.* The Mayor and City Council of Baltimore, in the 7th of Peters, pp. 247–'8, that it would seem to require nothing less than an effort to unsettle the most deliberate and best-considered conclusions of the court, to attempt to shake or disturb that doctrine. An extract from the reasoning of the Chief Justice, so full, so unanswerable on this point, may not be unfruitful of benefit as a guide to the future. After stating that the case was brought before the court in virtue of the 25th section of the judiciary act, the Chief Justice proceeds: "The plaintiff in error contends that it comes within that clause of the 5th amendment to the Constitution which inhibits the taking of private property for public use without just compensation. He insists that this amendment, being in favor of the liberty of the citizen, ought to be so construed as to restrain the legislative power of a State, as well as that of the United States. If this proposition be untrue, the court can take no jurisdiction of the cause.

"The question thus presented we think of great importance, but not of much difficulty.

"The Constitution was ordained and established by the people of the United States for themselves; for their own govern-

ment, and not for the government of the individual States. Each State established a Constitution for itself, and in that Constitution provided such limitations and restrictions on the powers of its particular Government as its judgment dictated. The people of the United States framed such a Government for the United States as they supposed best adapted to their situation, and best adapted to promote their interests. The powers they conferred on this Government were to be exercised by itself; and the limitations on power, if expressed in general terms, are naturally, and we think necessarily, applicable to the Government created by the instrument. They are limitations of power granted by the instrument itself; not of distinct Governments, framed by different persons, and for different purposes.

"If these propositions be correct, the fifth amendment must be understood as restraining the power of the General Government, not as applicable to the States. In their several Constitutions they have imposed such restrictions on their respective Governments as their own wisdom suggested; such as they deemed most proper for themselves. It is a subject on which they judge *exclusively*, and with which others interfere no farther than they are supposed to have a common interest."

Again, adverting to the causes which led to the proposal and adoption of the amendments of the Constitution, the same judge remarks, ib., p. 250—and these remarks embrace the whole series of articles adopted—"In almost every Convention in which the Constitution was adopted, amendments to guard against the abuse of power were recommended. These amendments demanded security against the apprehended encroachments of the General Government; not against those of the local Governments.

"In compliance with a sentiment thus generally expressed, to quiet fears thus extensively entertained, amendments were proposed by the required majority in Congress, and adopted by the States. These amendments contain no expression indicating an intention to apply them to the State Governments. This court cannot so apply them." (Vide also the cases of Fox *v.* The State of Ohio, 5 How., 411, and of The West River Bridge Company *v.* Dix et al., 6 How., 507.)

From the aforegoing view, it follows that neither the Constitution and laws of Mississippi, as interpreted by the High Court of that State, nor the provision of the fifth article of the amendments of the Federal Constitution, as construed by this court, can have any just applicability to the legitimate inquiry now before us.

The remaining objection to the decree of the High Court of

Errors and Appeals—that which is most directly pertinent to the present controversy—is that founded upon the allegation, that the law of Mississippi, of March 5th, 1850, creating the board of commissioners of the Homochitto, for the purpose of improving the navigation of that river, and of any outlet from the same through Old river and Buffalo bayou to the Mississippi, and for excavating a canal into the Buffalo from the Homochitto, or from Old river to the Buffalo, is a violation of the act of Congress of the 1st of March, 1817, authorizing the people of the Mississippi Territory to form a Constitution, which act declares "that the Mississippi river, and the navigable rivers and waters leading into the same, shall be common highways, and forever free as well to the inhabitants of the State of Mississippi as to other citizens of the United States."

In considering this act of Congress of March 1st, 1817, it is unnecessary to institute any examination or criticism as to its legitimate meaning, or operation, or binding authority, farther than to affirm that it could have no effect to restrict the new State in any of its necessary attributes as an independent sovereign Government, nor to inhibit or diminish its perfect equality with the other members of the Confederacy with which it was to be associated.   These conclusions follow from the very nature and objects of the Confederacy, from the language of the Constitution adopted by the States, and from the rule of interpretation pronounced by this court in the case of Pollard's Lessee *v.* Hogan, 3 How., p. 223.   The act of Congress of March 1st, 1817, in prescribing the free navigation of the Mississippi and the navigable waters flowing into this river, could not have been designed to inhibit the power inseparable from every sovereign or efficient Government, to devise and to execute measures for the improvement of the State, although such measures might induce or render necessary changes in the channels or courses of rivers within the interior of the State, or might be productive of a change in the value of private property.   Such consequences are not unfrequently and indeed unavoidably incident to public and general measures highly promotive of and absolutely necessary to the public good.   And here it may be asked, whether the law complained of, and the measures said to be in contemplation for its execution, are in reality in conflict with the act of Congress of March 1st, 1817, with respect either to the letter or the spirit of the act?   On this point may be cited the case of Veazie et al. *v.* Moor, in 14 How., 568.

By the allegations of the bill it appears that this trace or channel, which is distinguished by the appellation of Old river, is not in fact, and never was, a separate navigable river.   It

was once the bed or channel of the Mississippi, but, by natural causes, the latter many years since changed its bed or course, thereby rendering derelict the former bed or channel, which would be wholly without water, except what occasionally is forced into it from freshets in the Mississippi, and that which is received from the current of the Homochitto.  With no propriety of language, then, can it be pretended that the contemplated communication between the Homochitto and the Buffalo bayou would be the violation of a law which declares that the waters of the Mississippi, and the navigable rivers and waters leading into the same, shall be common highways, and forever free as well to the inhabitants of the State as to other citizens of the United States.  Old river was once the bed or a portion of the Mississippi, but never a separate navigable river flowing into the Mississippi.  Any improvement, therefore, in the facilities of reaching the Mississippi by another river, cannot be an obstruction in what never was, in any correct sense of the phrase, a navigable river leading or flowing into the Mississippi.

But, for argument, let it be conceded that this derelict channel of the Mississippi, called Old river, is in truth a navigable river leading or flowing into the Mississippi; it would by no means follow that a diversion into the Buffalo bayou of waters, in whole or in part, which pass from Homochitto into Old river, would be a violation of the act of Congress of March 1st, 1817, in its letter or its spirit; or of any condition which Congress had power to impose on the admission of the new State. It cannot be imputed to Congress that they ever designed to forbid, or to withhold from the State of Mississippi, the power of improving the interior of that State, by means either of roads or canals, or by regulating the rivers within its territorial limits, although a plan of improvement to be adopted might embrace or affect the course or the flow of rivers situated within the interior of the State.  Could such an intention be ascribed to Congress, the right to enforce it may be confidently denied.  Clearly, Congress could exact of the new State the surrender of no attribute inherent in her character as a sovereign independent State, or indispensable to her equality with her sister States, necessarily implied and guarantied by the very nature of the Federal compact.  Obviously, and it may be said primarily, among the incidents of that equality, is the right to make improvements in the rivers, water-courses, and highways, situated within the State.  Thus situated, as appears on the face of the bill, are the derelict bed of the Mississippi, called Old river, the Homochitto river, the Buffalo bayou, and the line of the canal by which it is proposed that

the two last shall be united for the more easy and certain access to the Mississippi.

The act of the Legislature of Mississippi, therefore, is strictly within the legitimate and even essential powers of the State, is in violation of neither the Constitution nor laws of the United States, and presents no conjuncture or aspect by which this court would be warranted to supervise or control the decree of the High Court of Errors and Appeals of Mississippi. We are therefore of the opinion that the decree of that court be affirmed.