Demeter Land Company, a Corporation, *Plaintiff in Error,* v. Florida Public Service Company, a Corporation, *Defendant in Error.*

En Banc.

Opinion filed May 3, 1930.

956

*Patterson & Wilson,* for Plaintiff in Error;

*E. W. and R. C. Davis,* for Defendant in Error.

DAVIS, Commissioner:

The defendant in error filed its petition in the Circuit Court in and for Hardee County, alleging therein that it is a corporation organized and existing for the purpose of generating, selling and transmitting electricity for public use and for lighting and furnishing electric power and for operating and transmitting electricity over certain lines already constructed for like uses; that certain land, particularly described in the petition is necessary for the use of the corporation for the purpose of transmitting electricity for public purposes and that such land is to be used as a right of way for the construction, maintenance and operation of the electric power lines for public uses and purposes; that it has located its line and intends in good faith to construct the same over the property; that it was unable to agree with the Demeter Land Company, the fee simple owner as to the matter of compensation therefor; that said land was sought for the purpose of being used as a right of way for the construction, maintenance and operation of its electric power line for public uses and purposes, and that the same is necessary for such said purpose.

The petition contains a prayer that upon the payment of the compensation allowed by a jury petitioner may take the land and use it for the purposes aforesaid for the use of the public.

The Demeter Land Company, the alleged owner of the fee, answered the petition, denying that the purpose for which petitioner seeks to condemn said property is a public use or purpose and further:

"That while the plaintiff, Florida Public Service Company, is incorporated under the laws of Florida, and its charter has condemnation privileges inserted therein, this defendant denies that said plaintiff has any right under the laws of the State of Florida, to condemn lands for the purpose of rights of way over the lands of this defendant.

"That the Plaintiff is not a corporation entitled to the rights of Eminent Domain, under the provision of the law, to condemn property for public works; or for public use;

"That the construction and maintaining of power lines by said plaintiff does not come under the purport and intent of the law, authorizing condemnation proceedings for public works;

"This defendant, denies that the construction and maintaining of power lines of said plaintiff, are, under the terms of the provision of the law, public works; and

"That the defendant believes, and now charges, that the plaintiff is without power, under the laws of the State of Florida, to the right of Eminent Domain, over the property of this defendant."

The petitioner demurred to that part of the answer which we have quoted, and on the same day filed a motion to strike the same from the answer, and also on the same day, filed exceptions to the same.

The court after due notice and hearing, made an order that the "exceptions to the answer, demurrer and motion

to strike'' be sustained. With leave of court, the said
Demeter Land Company filed an amended answer.

A trial of the cause resulted in a judgment that the
property in question ''be appropriated to the petitioner
as an easement'' upon the payment or deposit with the
clerk of the amount of compensation for said land which
had been assessed by the jury.

The plaintiff in error has assigned a number of errors;
the first three being predicated upon the ruling of the
court sustaining the said motion to strike, the said excep-
tions and the said demurrer. These three assignments of
error are the only ones that have been argued here. As
to the others, the plaintiff in error in its brief merely
submits them without argument or citation.

It is a rule of this Court that consideration by it of a
case here on writ of error or appeal will be confined to the
errors assigned and argued (Dell v. Marvin, 41 Fla. 221,
26 So. R. 188) except where a jurisdictional or other
fundamental error of law is apparent on the face of the
record, in which event such error may be considered by
the Appellate Court, though it is not assigned. Parker
v. Dekle, 46 Fla. 452, 35 So. R. 4; Bynum v. State, 76
Fla. 618, 80 So. R. 572; Gunn v. State, 78 Fla. 599,.
83 So. R. 511.

Section 5089, Comp. Gen. Laws of Florida, 1927, says:

''If no cause be shown to the contrary the judge of the
circuit court shall cause a jury of twelve men to be
empaneled to try what compensation shall be made to
the defendants for the property sought to be appro-
priated, irrespective of any benefit from any improve-
ment proposed by the petitioner, which issue shall be
tried in the same manner as the other issues of fact
are tried in the said circuit court. The jury shall in

all cases view the property, unless the parties interested in the issue consent to dispense with the viewing.

"Whenever it shall be made to appear to the judge of the court in which said cause is pending that said cause is at issue or stands on default duly and properly entered or that said cause is at issue as to one or more of the defendants and stands on default duly entered as to the others, in accordance with Sec. 5067, it shall thereupon become and be the duty of the judge of said court to try said cause at once whether it be in vacation or in term time (so long as said trial shall not interfere with the holding of any regular term of court within his judicial circuit) and to this end the judge may make all necessary orders for procuring the jury or in reference to the cause. If the jury can not agree, then the said judge shall forthwith empanel another jury and proceed with the trial of said cause: Provided, however, that if any jury is summoned out of term time, that the entire cost thereof including the compensation of such jurors shall be taxed as costs against the petitioner in said cause."

This carries with it the implication that the jury is to try only "what compensation shall be made to the defendants for the property sought to be appropriated," and as stated by Mr. Justice Brown, in Wilton v. St. Johns County, 98 Fla. 26, 123 So. R. 527, 532.

"This indicates that the court shall first determine the question whether any cause be shown why the property should not be taken before submitting the question of compensation to the jury."

Now it does not appear that that part of the answer which we have quoted relates to any of the allegations of

the petition that are essential to the exercise of the power of eminent domain (Sec. 5084, Comp. Gen. Laws of Florida, 1927) except the allegation which sets forth the authority under which the petitioner claims the right to take the property for public use. As we see it, these allegations of the answer raise a question of law, which well might have been raised by a demurrer to the petition. 2 Lewis on Eminent Domain, 3d Ed. Sec. 590. The statute does not set out in detail the procedure that may be followed, and it says nothing about the right of the defendant in condemnation proceedings to demur, but when such statutes are silent as to how questions may be raised, the courts in which the proceedings are instituted may adopt the usual modes of determining such questions. 2 Lewis Eminent Domain, 3d Ed. Sec. 589; Wilton v. St. Johns County, *supra*.

When the petitioner demurred to and moved to strike that part of the answer which challenged its authority to condemn the land for its right of way purposes, the question of law involved was just as effectually raised as thought the defendant had demurred to the petition.

Both sides have argued here, the right of the defendant in error to have the property in question condemned for the purpose of providing a right of way for its lines to be used in transmitting current for light, power and heat. This involves the consideration of a fundamental question —the taking of private property from one and delivering it to another—and if we were of the opinion (we are not) that the assignments of error argued here do not raise the question, we would nevertheless be disposed to settle it.

The Fifth Amendment of the Constitution of the United States prohibits the taking of private property for a ''public use'' without just compensation. It is necessa-

rily implied from the language there used that private property cannot be taken for any other purpose without the consent of the owner. However, this amendment was not intended to limit the powers of the state governments, but to operate on the National Government alone. Barron v. Baltimore, 7 Peters 243, 8 L. Ed. 672; Fallbrook Irrigation Dist. v. Bradley, 164 U. S. 112, 17 Sup. Ct. R. 56, 41 L. Ed. 369; Withers v. Buckley, 20 How. 90, 15 L. Ed. 816; In Matter of Spies, 123 U. S. 131, 31 L. Ed. 80; Twining v. Cornell, 211 U. S. 78, 53 L. Ed. 97; Thorington v. Montgomery, 147 U. S. 490, 37 L. Ed. 252; Kinkaid v. Jackson, 66 Fla. 378, 63 So. R. 706; Pittman v. State, 51 Fla. 94, 41 So. R. 385, 8 L. R. A. (N. S.) 509. The constitutions of many of the states contain a provision like the one referred to in the Federal Constitution.

Section 12 of the Declaration of Rights, Constitution of Florida, provides that no person shall be deprived of his property without due process of law, and that private property shall not be taken without just compensation, and Section 29 of Article 16 of the same instrument contains the following:

"No private property nor right of way shall be appropriated to the use of any corporation or individual until full compensation therefor shall be first made to the owner, or first secured to him by deposit of money."

Section 6042, Comp. Gen. Laws of Florida, 1927 (Section 4111, Rev. Gen. Stats., 1920) reads as follows:

"The president and directors of any corporation organized for the purpose of constructing, maintaining or operating public works, or their properly authorized agents, may enter upon any lands, public or private,

necessary to the business contemplated in the charter, and may appropriate the same, or may take from any land most convenient to their work, any timber, stone, earth or other material which may be necessary for the construction and the keeping in repair of its works and improvements upon making due compensation according to law to private owners.''

It will be observed that neither of the provisions of the Constitution of Florida above referred to prohibits the taking of private property ''for public use.'' The framers of the Constitution left it to the Legislature to declare the use for which property may be taken without the consent of the owner, and we have provisions of statutory law that specially authorize the taking of land for the use of railroad and canal companies, for telegraph and telephone lines, terminal facilities for railways and canals, and for drainage purposes, but not for rights of way for lines to transmit an electric current for light, power or heat. However Sec. 6042 Comp. Gen. Laws of Florida, 1927, permits an entry upon lands necessary ''for the purpose of constructing, maintaining or operating public works.''

The term ''public works'' has been defined as ''all fixed works, constructed for public use, as railways, docks, canals, water-works, roads, etc.'' Cent. Dict. Ellis v. Com. Council of G. R., 123 Mich. 567, 82 N. W. 244. We are constrained to adopt this definition and by so doing, said Sec. 6042 (Comp. Gen. Laws of Florida, 1927), read in connection with the provisions of our Constitution, means that when it is sought to take private property for the purpose of constructing, maintaining and operating ''public works,'' such property can only be taken for ''public use'' and not for private use. Therefore decisions in point in those juris-

dictions where private property can be taken only for public use should be persuasive in deciding the question before us.

The courts frequently have had difficulty in determining whether the use for which property was being condemned was a public or private use. One of the best definitions that we have found for the term "public use" is found in Boyd v. C. C. Ritter Lbr. Co. Inc., 119 Va. 349, 370, 89 So. E. R. 273, 279, L. R. A. 1917 A. 94, where it is stated:

"A use to be public must be fixed and definite. It must be one in which the public, as such, has an interest, and the terms and manner of its enjoyment must be within the control of the State, independent of the rights of the private owner of the property appropriated to the use. The use of property cannot be said to be public if it can be gainsaid, denied, or withdrawn by the owner. The public interest must dominate the private gain."

In enacting the provision of the statute embraced in said Section 6042, now under discussion, the Legislature could not have intended that private property be taken for the purpose of constructing, maintaining, or operating works that are merely beneficial to the public, or that only promote the public welfare. By placing such a construction upon the statute, it would mean that property could be taken for the promotion of any industrial corporate enterprise backed by private capital, which might, or might not, be of vast local public benefit, but upon which no demands could be made by any part of the public other than such demands as might be made upon any other private business. If the taking of private property is for the purpose of constructing, maintaining or operating public works—a public use—it is not necessary to such use

that the whole public shall participate in it. 1 Lewis Eminent Domain, 3rd Ed. 501; Deerfield R. Co. v. Wilmington P. & P. Co. 83 Vt. 458, 77 Atl. R. 862; Minn. C. & P. Co. v. Koochiching Co., 97 Minn, 429, 107 N. W. R. 405, 5 L. R. A. (N. S.) 638; Varner v. Martin, 21 W. Va. 534, 548 text; Board of Health v. Van Hoesen, 87 Mich. 533, 14 L. R. A. 114; Fallsburg P. & M. Co. v. Alexander, 101 Va. 98, 61 L. R. A. 129, 99 A. S. R. 855; Wilton v. St. Johns County, 98 Fla. 26, 123 So. R. 527.

Furthermore, if the service that is supposed to be rendered by a corporation is such that every individual or corporation within the radius of its operations has a right to it, independently of the will or caprice of the corporation, then the property so acquired is for a public use. Rockingham Co. L. & P. Co. v. Hobbs, 72 N. H. 531, 58 Atl. R. 46, 66 L. R. A. 581; Jones v. N. Ga. Electric Co., 125 Ga. 618, 54 So. E. R. 85, 6 L. R. A. (N. S.) 122.

It is generally, if not universally, held that the furnishing of electricity to the public for light, heat or power, that is to such members of the public within a given territory as may desire the current for any or all such purposes on equal terms, is a public use for which the power of eminent domain may be exercised. 1 Lewis Eminent Domain, 3 Ed. 536; Nichols, The Power of Eminent Domain, 266; Minn. C. & P. Co. v. Koochiching Co., supra; Nichols v. C. Va. P. Co., 143 Va. 405, 130 So. E. R. 764, 44 A. L. R. 727. For citations to support this proposition see splendid note in 44 A. L. R. 741.

In condemning property for its right of way, the defendant in error brings itself under obligation to the public to perform all those duties incident to its business in which the public is interested and to aid in the performance of which, the right of eminent domain was granted. W.

Va. & Md. P. Co. v. Raccoon Valley Coal Co., 93 W. Va. 505, 117 So. E. R. 891; So. Power Co. v. Walker, 89 S. C. 84, 71 So. E. R. 356; Brown v. Gerald, 100 Me. 351, 61 Atl. R. 785, 109 A. S. R. 526; Rockingham Co. L. & P. Co. v. Hobbs, 72 N. H. 531, 58 Atl. R. 46, 66 L. R. A. 581; 1 Lewis Eminent Domain, 3d Ed. 592.

But it is contended here by the plaintiff in error that the defendant in error is subject to no governmental control or regulation, and that the use to which it intends putting its power lines is strictly private and for private gain. This position is untenable. Because the State has no public utility or other commission with power to regulate and control plants that furnish heat, light and power for public use, it does not follow that the State cannot or will not at some future time assert its power by vesting the power of control and regulation in some body created or to be created by it. Neither does it follow that the rights of the public, as they relate to a public service corporation cannot be enforced even though such corporations are not placed under the supervision of some governmental agency. It is said by Pond in his work on Public Utilities, p. 527, 3 Ed., that

"The rule of law is now universally accepted that when private property is devoted to a public use it is subject to public regulation and control."

We find also that a corporation which is engaged in conducting a business which is public in its character, cannot arbitrarily select its patrons or distinguish in the service it renders them; but it must serve impartially and on equal terms and conditions all persons without discrimination. Pond, Public Utilities, 3d Ed. 295. Indeed, Sec. 30 of Article XVI of the Constitution of Florida, provides that:

"The Legislature is invested with full power to pass laws for the correction of abuses and to prevent unjust discrimination and excessive charges by persons and corporations engaged as common carriers in transporting persons and property, or performing other services of a public nature; and shall provide for enforcing such laws by adequate penalties or forfeitures."

And in the City of Tampa v. Tampa Waterworks Co., 45 Fla. 600, text 626, 34 So. R. 631, this Court said:

"The power mentioned in this Section (Sec. 30, Article XVI, Constitution) is full power; a continuing, ever present power. Being irrevocably vested by this Section, the Legislature cannot divest itself of it. Neither can it bind itself, by contract, nor authorize a municipality—one of its creatures—to bind it by contract, so as to preclude the exercise of this power whenever in its judgment the public exigencies demand its exercise."

This case was affirmed by the Supreme Court of the United States, (199 U. S. 241, 50 L. Ed. 170). See also State v. Tampa Water-works Co., 57 Fla. 533, 48 So. R. 639, 22 L. R. A. (N. S.) 680; So. Utilities Co. v. Palatka, 86 Fla. 583, 99 So. R. 236; State ex rel Atty. Gen. v. Pinellas Co. P. Co., 87 Fla. 243, 100 So. R. 504.

The transcript of the record shows that the defendant in error was organized and came into existence for the purpose of serving the public. The Legislature in whom the power is vested has granted to such public service corporations as the defendant in error the right to exercise the power of taking private property for public use, and though "property ownership," as stated in City of Pal-

968

·metto v. Katsch, 86 Fla. 506, 98 So. R. 352, "is one of the most sacred rights protected by the Constitution," the power of eminent domain is an attribute of the sovereignty of the State, and is absolute except as restrained by that instrument. United States v. Jones, 109 U. S. 513, 27 L. Ed. 1015; Searl v. School Dist., 133 U. S. 553, 33 L. Ed. 740; Ala. I. P. Co. v. Mt. Vernon Woodberry C. D. Co., 186 Ala. 622, 65 So. R. 287, 240 U. S. 30, 60 L. Ed. 507. So far as we are advised the defendant in error in exercising the power granted to it by the Legislature has acted within the law. The judgment of the lower court is, therefore, affirmed.

PER CURIAM.—The record in this cause having been considered by the Court, and the foregoing opinion prepared under Chapter 14553, Acts of 1929, adopted by the Court as its opinion, it is considered, ordered and adjudged by the Court that the judgment of the Court below should be, and the same is hereby, affirmed.

TERRELL, C. J., AND WHITFIELD, ELLIS, STRUM, BROWN AND BUFORD, J. J., concur.