**STATE v. HOOTEN.**

No. 69-48.

County Judge's Court, Lake County.

August 6, 1959.

Robert E. Pierce, Prosecuting Attorney, Leesburg, for the state.

O. B. McEwan, Sanders, McEwan, Schwarz & Mims, Orlando, and P. B. Howell, Jr., Sellar & Howell, Leesburg, for the defendant.

W. TROY HALL, Jr., County Judge.

On February 26, 1959, the grand jury of Lake County returned an indictment against Jack Hooten, then a county commissioner of Lake County, charging that—

"JACK HOOTEN, also known as J. H. HOOTEN, late of the County of Lake aforesaid, in the Circuit and State aforesaid, laborer, on the 4th day of February in the Year of our Lord, One Thousand Nine Hundred and Fifty-seven with force and arms at and in the County of Lake aforesaid, unlawfully was then and there a County Commissioner of Lake County, Florida, and did make a motion to the Board of County Commissioners, Lake County, Florida, to purchase Lots 5 and 6, Block 20, Minneola, Lake County, Florida, for the purpose of a County Barn site, for the sum of $10,000.00 lawful money of the United States of America, while at said time he, the said Jack Hooten, also known as J. H. Hooten, knowing of his interest, was interested in said Lots 5 and 6, by having an interest in said Lots 5 and 6, Block 20, Minneola, Lake County, Florida, and said County Commission, including County Commissioner Jack Hooten, also known as J. H. Hooten, did affirmatively vote to purchase said land and did purchase said Lots 5 and 6, Block 20, Minneola, Lake County, Florida, and as a result of said purchase said Jack Hooten, also known as J. H. Hooten, did receive the sum of $2,140.00 representing his interest in the above described purchase."

Evidently, as shown by a statute number on the back of the indictment and subsequent admission in the argument of the prosecuting attorney in behalf of the state, the defendant is charged with a violation of provisions of section 839.07, Florida Statutes 1957 which reads as follows—

"It is unlawful for any commissioned or other officer of this state, or for any officer elected or otherwise of any county or incorporated town or city therein, to bid or enter into, or be in any way interested in, a contract for the working of any public road or street, the construction or building of any bridge, the erecting or building of any house, or for the performance of any other public work in which the said officer was a party to the letting, and any person upon conviction thereof shall be punished by fine not exceeding five hundred dollars or imprisonment not exceeding one year."

Thus, the violation charged appears to be a misdemeanor as distinguished from a felony and was not within the jurisdiction of the circuit court. Hence, on March 3, 1959, the indictment was transferred from the circuit court to the county judge's court for trial. On April 14, 1959, a motion to quash the indictment was filed for the defendant by his attorneys, P. B. Howell, Jr. and O. B. McEwan.

The motion to quash came on for hearing on May 13, 1959, before this court. Argument in behalf of the defendant, Jack Hooten, and his motion to quash the indictment was presented by Mr. Howell and Mr. McEwan, defense attorneys. The state's argument against quashing the indictment was presented by Robert E. Pierce, County Prosecuting Attorney. After hearing the oral arguments and upon suggestion of the prosecuting attorney, the court granted the parties ten days in which to file briefs to aid the court in making a decision on the questions of law before the court.

The defense assigned substantially the following grounds in support of their motion to quash—

(1) That the indictment is so vague, indistinct, indefinite and uncertain that the defendant cannot intelligently plead thereto;

(2) That the indictment charges no crime under the laws of the state of Florida;

(3) That the facts as alleged and set forth in the indictment do not amount to a crime under the laws of this state;

(4) That the form of the indictment is defective in that it fails to substantially follow the form of indictment as set forth and provided by law;

(5) That the indictment is defective in that it states "that the said Jack Hooten, also known as J. H. Hooten, late of the County of Lake aforesaid, in the Circuit and State aforesaid, laborer, on the 4th day of February, in the year of our Lord, One Thousand Nine Hundred and Fifty-seven, with force and arms at and in the County of Lake, aforesaid, unlawfully was then and there County Commissioner of Lake County, Florida, representing District No. 3.";

(6) That there is no allegation in said indictment to show that this defendant violated any of the provisions of section 839.07 of the statutes;

(7) That there is no law in existence in the state of Florida making it a criminal offense for members of state or county boards to participate in lawfully constituted meetings of such

boards for the purchase of land in which such participating member might have an interest;

(8) That in the event the defendant is sought to be charged under the provisions of sections 839.08 or 839.09 such charge is violative of the defendant's rights as guaranteed by section 12 of the declaration of rights, constitution of the state of Florida, for the reason that section 839.091 makes an arbitrary and unreasonable distinction between public officers in counties of the state with a population of less than 100,000 and public officers in counties of the state with a population of more than 100,000 in cases where a charge is based upon sections 839.08 and 839.09.

Treating the grounds set out in the motion to quash in the order enumerated, the court finds—

With respect to ground (1) that a cursory reading of the indictment would not clearly apprise the defendant of the crime charged; that a more concentrated and detailed reading would expose several inconsistencies and make the preparation of a defense thereto difficult, if not impossible. The indictment is vague, indistinct, indefinite, uncertain and replete with ambiguity, so as to handicap and embarrass the defendant in the preparation of his defense. It does appear that good grounds exist for quashing the indictment under authority of section 906.25, which states— "No indictment . . . shall be quashed . . . unless the court shall be of the opinion that the indictment or information is so vague, indistinct and indefinite as to mislead the accused and embarrass him in the preparation of his defense or expose him after conviction or acquittal to substantial danger of a new prosecution for the same offense."

That grounds (2) and (3), alleging that the indictment charges no crime and that the alleged facts do not amount to a crime under Florida law, are well founded and will be treated more fully hereinafter.

With respect to ground (4) that the form of the indictment appears archaic and some of the words and terms are surplusage or incorrectly used and not consistent with the requirements of chapter 906, Florida Statutes.

With respect to ground (5) that an application of the plain-meaning rule of construction would negate an essential element of the crime sought to be charged. If Jack Hooten was "*unlawfully*" a county commissioner, he could not possibly be properly charged with a crime for which only a duly elected or appointed officer is liable. While it is reported that the grand jury spent days and

weeks in the investigation of the charges against the defendant, it appears that the indictment itself was hastily, if not carelessly, put together. The inclusion of archaic, inapplicable and inappropriate words and phrases such as "force and arms", which means when used in an indictment or information that the act complained of was done with violence, was improper. People v. Samuels, 18 N.Y.S. 2d 532, 538, 259 App. Div. 167, is not applicable in this case where no violence is indicated. Nor is the word "laborer" suitable for use herein. The word "unlawfully" is either misplaced, if intended to describe the alleged offense, or misspelled if intended to describe the defendant's status as a commissioner. Chapter 906, Florida Statutes, clearly indicates the proper way to draw an indictment with the minimum use of words. This modern statute does not require use of archaic or surplus words or phrases so frequently found in antiquated forms. It would appear that the prosecution in this case followed some old form from a dissimilar case, not the modern form prescribed by our current statute.

With respect to ground (6) that although the face of the indictment did not specifically allege that any of the provisions of section 839.07 were violated, there is a possibility that this could have been gleaned from the back of the indictment, where the number of the statute is typed, coupled with "contrary to the form of the statute, in such cases made and provided" as found on the face of the indictment. This is an extremely fine point and one which might even tax the minds of my superiors in the judiciary.

As to ground (7) that the allegation denying the existence of any Florida statute making it a criminal offense for a member of a county board to participate in a meeting of such board for the purchase of land in which such participating member has an interest appears to be well founded, and will be considered further in due course.

As to ground (8) that it is unnecessary to consider the alleged unconstitutionality of the provisions of section 839.08 or 839.09, since the prosecution, as stated by the prosecuting attorney at the hearing, is based solely upon the alleged violation of the one statute, section 839.07.

There appears to be another very strong technical ground for quashing this indictment which was not directly raised by the motion to quash. The court must take notice of such ground because while it is not glaringly apparent from a cursory view of the face of the indictment, a more careful scrutiny clearly reveals and indicates the application of section 932.05, the statute of limitations, which provides—

"All offenses not punishable with death, save as hereinafter provided, shall be prosecuted within two years after the same shall have been committed. There shall be no limitation for offenses punishable with death. In all offenses not punishable with death where an indictment has been found or an information filed within two years after the commission of the offense and such indictment or information, because of any defect, omission or insufficiency in the contents or form thereof, is subsequently quashed or set aside after said two year period has elapsed, in that event further indictments may be found or informations filed for such offense within three months after the entry of the order of the court quashing or setting aside the indictment or information, and prosecution thereunder shall proceed as if the same were commenced within two years after the commission of the offense."

This indictment was filed more than two years after the offense alleged therein occurred. Here the offense is alleged to have transpired on February 4, 1957; the indictment was filed on February 26, 1959. Thus, it would appear that the statutory period for beginning prosecution of the alleged offense expired 22 days before the action was commenced.

However, it might be contended that another statute extends the statute of limitations for the prosecution of public officers. This statute, section 932.06, provides—"All offenses by state, county or municipal officials, committed during their term or terms of office, in any way connected with the discharge of the duties of their different offices, shall be prosecuted within two years after the said officer shall retire from such office."

An exhaustive search and considered analysis of the cases in point reveals that the better reasoned authorities hold such a statute applies only where the offense was not discovered during the officer's tenure in office. E.g., San Diego County v. Dauer, 131 Cal. 199, 63 P. 338 (1900); State for Use of Houston County v. United States Fidelity & G. Co., 239 Ala. 445, 195 So. 426 (1940); State v. Davis, 42 Or. 34, 71 P. 68 (1903), rehearing denied in 42 Or. 40, 72 P. 317 (1903). It would appear that the two year limitations period from the officer's retirement from office applies only in instances where the offense was not discovered until after the officer left office. The apparent purpose of this statute was to limit the period for prosecution of an officer for an offense discovered after he left office. Surely, it was never the intent of the legislature that such a statute would extend the general statute of limitations on offenses discovered while an officer is still in office. E.g., Fidelity & C. Co. v. State, 197 Ark. 1027,

126 S.W. 2d 293 (1939); Bannock County v. Bell, 8 Idaho 1, 65 P. 710 (1901); Washington v. Bonner, 203 N.C. 250, 165 S.E. 683 (1932).

On the surface, a recent case decided by the Florida Supreme Court might be thought controlling as to the application of this statute. However, a more thorough study shows that in State v. Bruno, 107 So. 2d 9 (Fla. 1958), the court there concerned itself with the constitutionality of section 932.06, and such question is not at issue in the instant case.

In the case before this court, most of the grounds in the motion to quash considered up to now, in the mind of a layman, might be thought merely technical. Even so, the court must recognize them as being legally sound and should, therefore, as a matter of law, quash the indictment. However, without and aside from these technical grounds, a much more compelling substantive reason requires the quashing of this indictment.

The court finds that the acts allegedly committed by Jack Hooten do not violate section 839.07, the statute relied upon by the state, or any other law brought to the attention of the court. Since it is not alleged that the defendant entered into a contract for the working of a public road or street, the construction or building of any bridge or the erecting or building of any house, the state must be, and so acknowledges in its brief, relying on the statutory language "or for the performance of any other public work" to bring the defendant within the scope of the statute.

Since its enactment in 1891, section 839.07 has had substantially the same wording and entirely the same meaning. Fourteen years after its passage, the Supreme Court of Florida ruled in Lainhart v. Burr, 49 Fla. 315, 38 So. 711 (1905), that section 839.07 was limited in scope, and had no application to the purchase of supplies by an officer of the county from himself; a fortiori, this statute does not apply to or prohibit land purchases by the county from a public official. It is significant to note that a law, which is now section 839.09, had been passed during the year 1903 and during the pendency of the Lainhart case prohibiting county officers from entering into contracts for the purchase of supplies from themselves. Such a law prohibiting the purchase of land by a board of county commissioners from one of its members has not yet been enacted by the legislature.

There must be a very good reason why the Florida legislature has seen fit, in these fifty-odd years since the decision in the Lainhart case, to refrain from enacting a law to prohibit the sale

of land to the county by one of its officers. It could well be that the legislature, consisting of lawyers and laymen alike, regards real property and personal property as being entirely different and distinct from each other. One distinction is the difference between moveables and immoveables; personalty can be carried away and concealed while realty is stationary and present for all to see. Much personalty, particularly supplies, may be identical or replaceable insofar as practical usage is concerned; they can be interchanged and one will do as well as another. Each parcel of realty, on the other hand, has its own peculiarities and characteristics. The value of personalty may depreciate with use and age while the value of realty is more stable and generally much more readily determined and ascertained than is that of personalty. Ownership and other interests in land were adequately protected by the Statute of Frauds and other laws of greater antiquity long before any great consideration was devoted to the value of personalty or the need of laws for its protection. Hence, the legislature has ample legal, as well as practical, basis for not having ever passed a statute prohibiting county officers from selling land to the county.

Many cases in all jurisdictions have held various transactions between public officers and governmental agencies void on the ground of public policy. A careful reading of these cases shows that even for a civil transaction to be ruled void as against public policy, it must be found to be against public interest and an injury to the public must be shown. Mature, fair and considered reasoning will reveal that it is not against public policy to permit the purchase of land by governmental agencies from public officers. Quite to the contrary, it would actually be against public interest to prohibit such purchases. Consider what would happen to our great road building program if it were a violation of law for a public officer to sell land to the county or state. Every time the path of a road led to a public officer's land, a detour would have to be made. Since the Florida Supreme Court has ruled frequently and consistently that not only elected officers but also their employees, advisors and agents are considered public officers, City of Miami v. Benson, 63 So. 2d 916,921 (1953), it would be impossible to go many miles in any direction without encountering some such land that could not be purchased. The same situation would prevail when a public building such as a new municipal building, county courthouse, jail, etc. was contemplated. Consequently, the legislature has wisely never sought to prohibit the purchase of realty from a public officer by the board upon which he sits as a voting member.

"Public work" as used in section 839.07 has been defined by our Supreme Court only twice. One opinion, Opinion of Justices, 13 Fla. 699,720 (1871), held that railroads were public works, for obvious reasons, and the other, Demeter Land Co. v. Florida Public Service Co., 99 Fla. 954, 128 So. 402,406 (1930), states that public work means "all fixed works, constructed for public use, as railways, docks, canals, waterworks, roads, etc." At no time has the Supreme Court attempted to define the purchase of land from a public officer by the board on which he sits as coming within the scope of "public works." If the defendant's action in this cause is not brought under the specified statute by these words, it apparently is not encompassed within the statute.

It is significant to observe that both of the cases relied upon by the prosecution to hold section 839.07 applicable to the criminal case at issue are civil cases as distinguished from criminal cases. There is a manifest and well established distinction between civil and criminal cases.

The first case relied upon by the state, Town of Boca Raton v. Raulerson, 108 Fla. 376, 146 So. 576 (1933), involved a civil action to recover land conveyed to the town while the grantor was serving as a commissioner of the town. Although seventy assignments of error were presented to the court on appeal, it considered only the matter of whether the lower court properly sustained a demurrer to the eighth count of the declaration; this was the only issue considered which was properly before the court and it reversed and remanded the case to the lower court with directions to overrule the demurrer. All other statements by the court had no bearing on the issue involved and are pure and simple *obiter dicta* and lack the force of an adjudication. Wheeler v. Wilkin, 98 Colo. 568., 58 P. 2d 1223,1226 (1936). *Obiter dicta* are such opinions uttered by the way, not upon the point or question pending, as if turning aside for the time from the main topic of the case to collateral subjects. Rohrbach v. Insurance Co., 62 N.Y.47, 58, 20 Am. Rep. 451.

The other case relied upon by the state to bring the defendant within the operation of section 839.07 was City of Stuart v. Green, 156 Fla. 551, 23 So. 2d 831 (1945). This case concerned itself with the validity of the sale of land to the city by a corporation of which one of the city commissioners was also a stockholder. In deciding this case, the court relied heavily upon statements previously made in the Boca Raton case, supra, and which we have herein pointed out are *obiter dicta* and of no binding legal precedent. The other ground relied upon by the court to rule that

the lower court should not have dismissed the city's restraining action was a prohibition of such contracts by section 13 of the city charter. Certainly the interpretation by the court of the city's charter is immaterial and worthless as precedent in the case now before this court. It must be concluded that both civil cases cited by the prosecution are inapplicable and valueless insofar as this criminal action for the violation of section 839.07 is concerned.

The Attorney General of Florida has clearly and concisely considered the distinction between civil and criminal cases in his opinion no. 058-324, by reiterating the strict rules the courts are required to follow when construing a penal statute. The pertinent part of this opinion reads substantially as follows—

"Where a statute is penal, it must be construed with such strictness as to carefully safeguard the rights of the accused and at the same time preserve the obvious intention of the legislature. Watson v. Stone, 148 Fla. 516, 4 So. 2d 700, 702 (1941).

"This theory is in keeping with the principle set down by the Florida Supreme Court that, if there is doubt or ambiguity in any provision of a statute leaving a doubt as to its meaning, the provision is to be construed in favor of the innocence of the accused. 113 Fla. 760, 153 So. 87 (1934)."

It is a settled rule of law in the construction of statutes defining crimes that there can be no constructive offenses and that to warrant punishment the case must be plainly and unmistakenly within the statute. United States v. Bathgate, 246 U.S. 220, 38 S. Ct. 269 (1918) ; Fasulo v. United States, 272 U.S. 620, 47 S. Ct. 200 (1926).

These opinions are consistent with the basic constitutional provision found in our federal and state constitutions to the effect that under our system of administering justice an accused is presumed to be innocent of any crime until each and every essential element of the crime of which he is charged is proven in court beyond and to the exclusion of every reasonable doubt. A citizen shall not be divested of this important basic privilege upon accepting public office.

Although section 839.07 has been in the statutes in essentially its present form since 1891, not a single case has ever come before our Supreme Court in which a public officer was sought to be charged criminally for the sale of land to the state or county, although we may be sure that many an acre has been so purchased and sold to make way for the many fine roads traversing our state.

If our county has been wronged in any way by the purchase of land from Mr. Hooten, the remedy, if any, is in a civil action and not by way of criminal procedure.

The court has devoted countless hours to study, research and deliberation in seeking the proper, legal, just and sound decision in this case. Precedent, reason and justice require that the motion to quash be granted.

It is, thereupon, ordered and adjudged that the motion to quash should be, and it hereby is, granted. The motion being granted and the indictment being quashed, the charges are dismissed and the defendant is discharged from prosecution.