Dear Mr. Battista:
On behalf of the Citrus County Commission you ask the following question:
Is the mechanical harvesting of aquatic vegetation and tussock removal (floating islands) a public work pursuant to section 255.05, Florida Statutes?
You indicate that Citrus County contracts with private parties to remove aquatic weeds and floating tussocks which impede the navigable waterways within the county. While the waterways are owned by the state, the county undertakes clearing them in order to ensure navigability. The county currently has a three-year contract for a potential expenditure of approximately three million dollars. The contract references section255.05, Florida Statutes, and requires the securing of a performance and payment bond. For purposes of this opinion it is presumed that the county has made the appropriate legislative findings that the removal of aquatic weeds from state-owned waterways serves a county purpose.[1]
Section 255.05, Florida Statutes, generally requires any person entering into a formal contract with any county for the "prosecution and completion of a public work, or for repairs upon a public building or public work" to execute, deliver to the public owner, and record in the public records of the county where the improvement is located a payment and performance bond with a surety authorized to do business in Florida.
Section 255.05, Florida Statutes, prescribes the bond required of contractors constructing public buildings or public works. The purpose of this section requiring a contractor to obtain a payment and performance bond is to protect subcontractors and suppliers on public construction projects by providing them with an alternative remedy to the mechanics' lien available on private construction projects.[2] The payment bond ensures that subcontractors and materialmen will be paid, while the performance bond guarantees that the contract to perform the public work will be fully performed.[3] As the statute is remedial in nature, it is entitled to liberal construction to effect its intended purpose.[4]
The term "public work" is not defined by statute. Absent a statutory definition or use in a specific context, the term should be interpreted in its plain and ordinary sense. The term "public works" has been defined as "[s]tructures (such as roads or dams) built by the government for public use and paid for by public funds."[5] While "public works" have been traditionally defined as fixed works,[6] the definition has been broadened to include "other works which by statute are authorized to be constructed for public purposes by the state or public agencies. . . ."[7] By comparison, the term has been used in conjunction with public roads, bridges, and farms,[8] as well as publicly owned and maintained navigation channels.[9]
The courts of this state have made it clear that statutes are to be interpreted in a manner to effectuate the legislative intent. As discussed above, the purpose of section 255.05, Florida Statutes, is to provide protection to subcontractors and suppliers on public construction, by ensuring that they will be paid, and to guarantee that the work will be fully performed. Thus it fulfills the Legislature's intent to require the bond prescribed in section 255.05, Florida Statutes, on projects involving the performance of work on a public project.
It is my opinion, however, that the removal of aquatic weeds has no relationship to improvements of a fixed work or any construction. Ultimately, the determination of whether the removal of aquatic weeds is a public work is a factual question which may not be made by this office.
Sincerely.
[1] Cf. Op. Att'y Gen. Fla. 2002-48 (county funds may not be used to maintain or repair privately-owned roads and related infrastructure or privately-owned water and sewer systems in private communities).See s. 369.255(1), Fla. Stat., stating the legislative finding that proper management of aquatic zones is essential to the state's environment and economy and to the health and safety of the state's residents and visitors.
[2] See, e.g., Blosam Contractors, Inc. v. Joyce, 451 So. 2d 545 (Fla. 2d DCA 1984); Gorman Company of Fort Lauderdale, Inc. v. Frank MaioGeneral Contractor, Inc., 438 So. 2d 1018 (Fla. 4th DCA 1983).
[3] See Florida Board of Regents v. Fidelity Deposit Company,416 So. 2d 30 (Fla. 5th DCA 1982); Guin v. Hunt, Inc. v. Hughes Supply,Inc., 335 So. 2d 842 (Fla. 4th DCA 1976).
[4] See Fidelity and Deposit Company of Maryland v. Waldron's,Inc., 608 So. 2d 119 (Fla. 4th DCA 1992).
[5] Black's Law Dictionary (Eighth Ed.), "Public works", p. 1639.
[6] See Demeter Land Company v. Florida Public Service Company,128 So. 402 (1930).
[7] Housing by Vogue, Inc., v. Department of Revenue, 422 So. 2d 3
(Fla. 1982) (definition of public works expanded to include mobile personal property, i.e. portable classroom units, where their construction was authorized by statute for public purposes).
[8] See s. 951.05, Fla. Stat., allowing county prisoners to be used as labor for specified purposes.
[9] See s. 258.40(2), Fla. Stat., prescribing the scope of aquatic preserves under Chapter 258, Fla. Stat.
fn10 See, e.g., State v. Iacovone, 660 So. 2d 1371 (Fla. 1995) (under standard rules of construction, it is court's primary duty to give effect to legislative intent of a statute; and if literal interpretation leads to an unreasonable result, plainly at variance with purpose of legislation as a whole, court must examine the matter further).