CONSOLIDATED COAL CO. *v.* BOARD OF TRUSTEES OF THE MICHIGAN EMPLOYMENT INSTITUTION FOR THE BLIND.

PUBLIC OFFICERS—FIDUCIARY RELATIONS — CONTRACTS—VALIDITY —STATUTES.

> A sale of coal to the Michigan Employment Institution for the Blind, by a corporation in which one of the three trustees of the institution is interested as a stockholder, is absolutely void, under §§ 11384, 11385, 3 Comp. Laws, forbidding such trustee, agent, etc., of any State board from being interested in any contract, purchase or sale of such institution.

Case-made from Saginaw; Gage, J.   Submitted November 29, 1910.   (Docket No. 73.)   Decided December 30, 1910.

Assumpsit by the Consolidated Coal Company, a foreign corporation, against the board of trustees of the Michigan Employment Institution for the Blind, for goods sold and delivered.   A judgment for plaintiff is reviewed by defendant on writ of error.   Reversed, and no new trial ordered.

*Franz C. Kuhn*, Attorney General, and *J. Shurly Kennary*, Assistant Attorney General, for appellant.

*Humphrey, Grant & Baker*, for appellee.

Act No. 107 of the Public Acts of 1873 (3 Comp. Laws, sections 11384, 11385), is entitled "An act to prohibit officers of public institutions from being interested in contracts made therewith, and to prevent bribery," and it reads:

"SECTION 1.   *The People of the State of Michigan enact*, that no trustee, inspector, regent, superintendent, agent, officer, or member of any board having control or charge of any educational, charitable, penal, pauper, or reformatory public institutions of this State, or of any county thereof, shall be personally directly, or indirectly interested in any contract, purchase, or sale made for, or on account, or in behalf of any such institution, and all such contracts, purchases or sales shall be held null and void; nor shall any such officer corruptly accept any bribe from any persons interested in such contract; and it is hereby made the duty of the governor or other appointing power, upon proof satisfactory of a violation of the provisions of this section, to immediately remove the officer or employé offending as aforesaid; and upon conviction thereof before a court of competent jurisdiction, the offender shall be punished by a fine not exceeding five hundred dollars.
"SEC. 2.  Any person interested directly or indirectly in a contract with a State or county institution who shall corruptly give, offer, or promise to any officer of such institution any bribe, gift, or gratuity whatever, with intent to improperly influence his official action under such contract, shall be punished by a fine not exceeding five hundred dollars.
"SEC. 3.  This act shall take immediate effect."

Plaintiff is a Maine corporation authorized to do and doing business in Michigan.   The Michigan Employment Institution for the Blind was established, its management provided for, and an appropriation made therefor, by Act No. 169 of the Public Acts of 1903.   It is located in the city of Saginaw.   Supervision and government of the institution is vested in a board of three trustees.   During the year 1908, S. S. Judd was superintendent of the institution and performed the duties of the office.   This action is assumpsit, brought against the trustees to recover the price and value of coal.   The de-

fendant board pleaded the general issue, and gave notice that it would insist in its defense that at the time the sales of coal were made James H. Malcolm was a member of the defendant board of trustees of said institution, as well as interested as a stockholder in plaintiff company, for which reason the coal was sold and purchased contrary to the provisions of the statute above referred to, and plaintiff could not recover.

In addition to the facts already stated, the following were stipulated by the parties:

"That the coal described in plaintiff's bill of particulars in this case was delivered by the plaintiff to said institution in the city of Saginaw, Mich., on the order of said Judd, as superintendent, in amounts and at the dates mentioned in said bill of particulars, and that said coal was received, used, and consumed in the business and operation of said institution, and was of the value charged and set out in said bill of particulars at the respective dates of delivery, and at the time of its use and consumption by the said institution; that at the time the coal was so ordered and delivered there was an oral agreement between the plaintiff and defendant that the plaintiff should furnish and deliver to the defendant coal at and for the price of $2.85 per ton as needed and ordered.

" That the defendant has not paid the plaintiff for said coal, or any part thereof, and that, if the plaintiff is entitled to recover in this case against defendant, it is entitled to recover in the sum of $232.32, and, if entitled to recover interest, it is entitled to recover on $232.32 from June 1, 1908, at 5 per cent. per annum.

" That at the time said coal was purchased and delivered by the plaintiff to the said institution, James H. Malcolm, of the city of Saginaw, Mich., was a member of the board of trustees of said institution, and the treasurer thereof, and was also a stockholder of plaintiff, and as such interested in plaintiff; but was not at said times an officer, director, or agent, nor in the employ, of plaintiff, and received no pecuniary or other benefit or profit from the sale and delivery of the coal to said institution, except as a stockholder of plaintiff; that at that time the capital stock of plaintiff issued and outstanding was $2,-374,100, and the said James H. Malcolm was the owner of

$30,000 thereof, and that the net profit to the plaintiff on said coal was 25 cents per ton.

"That the board of trustees of the said institution held a regular monthly meeting on the first Tuesday of August, 1908, at which time the bills for the coal specified in the plaintiff's bill of particulars came before the said board of trustees for audit; that at that meeting the said S. S. Judd informed the said board of trustees that he had been advised by the attorney general's department that the said coal bills could not be legally paid; that the said board, after being so informed, audited and allowed the said coal bills, the said James H. Malcolm being present and acting thereon, the said vouchers so audited being certified to by the president and said James H. Malcolm as treasurer of said board; that the said James H. Malcolm, as treasurer, drew a check in payment of said claim in favor of plaintiff, and instructed said S. S. Judd to send said check to plaintiff; that thereafter the said board of trustees directed that the check be not delivered to plaintiff until said vouchers were approved by the auditor general."

The trial court found that the contract was not absolutely void; that the statute is merely an affirmance of the common law, and, if the purchase contravened its provisions, it was voidable, and not void; that, being voidable, the board of trustees could ratify it, and that it did so by auditing and allowing the account and issuing its check therefor; that if the contract was voidable, at the option of the said board of trustees, it could not be avoided without tendering back the property received, and, as it is not in a position to do that, it is bound to pay the reasonable value of the coal. He also made and stated the following conclusions:

"*Fifth.* It does not appear that Mr. Malcolm's vote was necessary to authorize the purchase in question, and such purchase was not therefore even voidable, notwithstanding any interest Mr. Malcolm may have had in the sale of the coal.

"*Sixth.* It does not appear that Mr. Malcolm in any way participated in making the so-called oral agreement referred to in the fourth paragraph of the stipulation of facts, and there is no presumption that he did. So far as

appears by the stipulated facts, therefore, that agreement was not contrary to public policy, and defendant had and consumed the coal of plaintiff, the latter can recover the value thereof in this suit.

"*Seventh.* If said oral agreement was absolutely void under 3 Comp. Laws, § 11384, then the said agreement was of no force and effect, and no delivery of coal could be made thereafter under it. The coal for which this suit is brought was not delivered, therefore, by virtue of that agreement, or under it, and, defendant having consumed the same, an action on the common counts will lie therefor.

"*Eighth.* Mr. Malcolm was not, by reason of his being a stockholder of plaintiff, 'personally directly or indirectly interested in the purchase' of the coal in question.

"*Ninth.* The plaintiff is entitled to recover $232.32 and interest at 5 per cent. per annum from June 1, 1908, to date of judgment."

To these conclusions the attorney general filed exceptions, upon which, later, error was assigned. Judgment passed for the plaintiff. The questions involved are stated by the attorney general in the brief as follows:

"I. Was the said contract and purchase void at common law?

"II. Does section 11384, 3 Comp. Laws 1897, render contracts, purchases, and sales void or voidable?

"III. Was it within the power of the board of trustees to ratify the contract?

"IV. Was the defendant required, before it could plead the statute, to return the coal?

"V. Was Mr. Malcolm's vote in favor of the contract required under the statute, before the statute is operative against the contract?

"VI. Was the coal in question delivered under the contract? If not, will an action on the common counts lie for the price and value thereof?

"VII. Was Mr. Malcolm's interest as a stockholder in the plaintiff corporation such an interest as to bring the contract within the prohibition of the statute?

"VIII. Was the plaintiff entitled to recover upon an implied contract?"

And these are argued in the brief under the heads:

"The Validity of the Contract under the Common Law.
"The Effect of the Statute upon the Contract.
"The Right of Plaintiff to Recover."

OSTRANDER, J. (*after stating the facts*). If we regarded the statute which is invoked by the attorney general as merely affirmatory of a rule developed by the courts, we should be obliged to consider the limitations of the rule which the courts have recognized, some of which are stated and discussed in the briefs. We do not regard the statute as merely putting in form of positive law a rule developed by courts, but as a legislative rule, founded in public policy, the plain effect of which courts are not at liberty to deny or to amend. In this view, a very simple question is presented, namely: Was the sale of coal which is in question made in violation of the law? If it was, it was a void sale. There can be but one answer to the question.

The judgment of the circuit court is reversed, with costs of both courts, and as, upon the stipulated facts, the plaintiff is not entitled to recover, a new trial will not be granted.

HOOKER, MOORE, MCALVAY, and BROOKE, JJ., concurred.