### FERLE *v.* CITY OF LANSING.

1. Municipal Corporations — Contract — Officials — Fraud — Lansing Charter.

Under the provisions of the charter of the city of Lansing, which prohibits any member of the city council from holding any office or position, or receiving any employment directly or indirectly connected with the government, and forbids any member of the council or person holding any elective or appointive office from being interested in any contract with the city, under a penalty of fine or imprisonment, a purchase of lumber by the board of public works

from a corporation in which a member of the police and fire commission was a stockholder, vice president and manager, was invalid and justified the lower court in entering a decree in chancery enjoining the payment of the price.

2. SAME—CONTRACTS—CORPORATIONS.

Such transaction is not analogous to the furnishing of light and water to city officials and members of the council, which is in the nature of a privilege open to all the citizens or of a common benefit available upon an equality of terms.

3. SAME—SALES—CONSTRUCTION.

The prohibition of the charter prevents the city from making purchases of a corporation of which any officer of the city or member of the council is an officer or stockholder, a sale being a form of contract intended to be prohibited.

4. SAME.

Although the charter provisions do not in terms make the contract or sale void, the imposition of the penalty has by implication a like effect.

5. SAME—PUBLIC POLICY.

A contract made void by the charter or by statute is incapable of ratification nor can a recovery upon it be permitted; the courts will leave the parties where it finds them.

6. SAME.

And want of knowledge by the officer, of the execution or existence of the contract, is not conclusive; it is unenforceable whether he helped to procure it or not.

Appeal from Ingham; Wiest, J. Submitted October 18, 1915. (Docket No. 151.) Decided December 22, 1915.

Bill by Jacob Ferle against the city of Lansing and others for an injunction restraining the defendant city from paying a lumber bill. From a decree for complainant, defendant Rikerd Lumber Company appeals. Affirmed.

*Jason E. Nichols,* for complainant.

*Joseph H. Dunnebacke,* for defendant city of Lansing.

*Warner, Raudabaugh & Person* and *C. W. & W. S. Foster,* for defendant Rikerd Lumber Co.

BROOKE, C. J.   The present charter of the city of Lansing, adopted by the electors in 1912, contains the following provision:

"Sec. 53.   No member of the city council shall, during the period for which he was elected, be elected or appointed to, or be competent to hold any office or position or receive any employment directly or indirectly connected with the government.   No member of the city council nor any person holding any elective or appointive office under the city government shall be interested in any contract with the city, or be a bondsman or surety on any contract or bond given to the city.   Any member of the city council or other officer violating the provisions of this section shall, upon conviction thereof, be fined not less than one hundred nor more than five hundred dollars, or be imprisoned for not less than thirty days nor more than one year, or both such fine and imprisonment within the discretion of the court.   The conviction of any alderman or official under this section shall operate in itself to forfeit his office."

This suit is brought to enjoin the payment of a bill of $140.62 for lumber sold and delivered to the city by the Rikerd Lumber Company, a domestic corporation. It is the theory of the bill of complaint that the sale of the lumber was in violation of the charter provision, inasmuch as Hiram W. Rikerd, a stockholder of the lumber company and its vice president and manager, was also, at the time of the sale, an officer of the city, namely, a member of its board of police and fire commissioners.   The lumber was purchased for the city by its superintendent of public works, and the purchase was made of an employee of the lumber com-

pany without the personal knowledge of Mr. Rikerd, who was also unaware of its delivery to the city. The board of police and fire commissioners did not, nor did any of its members, have any official connection with the purchase; their department being entirely distinct and separate from the department of public works. It is conceded that the lumber was sold at a lower price than it could have been purchased for elsewhere. When the bill came before the common council of the city, complainant, who is a member thereof, as well as a taxpayer of the city, protested against its consideration; but a majority of the council thought otherwise, and voted that it be allowed. Thereupon this suit was begun, and was heard upon bill and answer, the facts being conceded. In the circuit court a decree was entered declaring the transaction void, and perpetually enjoining payment for the lumber. The city attorney files a brief asking that the decree be affirmed.

The first question discussed by counsel is whether, under this charter, one department of the city government may make purchases of a corporation when an officer in another and distinct department is also an officer or a stockholder, or both, oi such selling corporation. The determination of this question does not depend upon the rules of public policy alone, as developed and applied by the courts in the absence of a controlling statute. The provision of the charter is broader than those rules, as usually applied; and, while both are founded upon the same general principles, the charter itself is the declaration of the public policy of the city. By its terms it prohibits every contract made by the city, in which any officer thereof, or member of its common council, has a private interest, and it is immaterial whether such official, or his department, has any part in the making of the contract, or could have. The electors had a right to include such a provision in their charter, and it should not and cannot be nar-

rowed by judicial construction. Provisions as broad are not uncommon in statutes and in the charters of municipalities, and their increasing breadth and scope come from experience, and a conviction that purity of government must be carefully maintained. It is urged that so sweeping a prohibition, if construed according to its terms, will operate to deter business men from accepting office. This is an argument to be addressed to the electors themselves, rather than to the courts; but the electors undoubtedly believed that enough good men could be found to administer the government of the city after excluding those who expected or desired contracts with it. It is also argued that such construction of the charter will prevent city officials and members of its council from taking their water supply and electric lighting from the city. But this is not so. While the relation between the city and the consumer of water and lighting furnished by it is a contract relation, it is more in the nature of a common benefit or privilege, open to all citizens upon the same terms, and not within the meaning or purpose of the charter prohibition.

It is true that this prohibition in the charter prevents the city from making purchases of a corporation of which any officer of the city, or member of its council, is an officer or stockholder. This was determined, on principle, in *Consolidated Coal Co.* v. *Board of Trustees,* 164 Mich. 235 (129 N. W. 193). A sale is a contract, and a form of contract in which the evil sought to be remedied by the charter is most frequently apparent. And, as said in *Hardy* v. *Mayor and Council of Gainesville,* 121 Ga. 327 (48 S. E. 921):

"A stockholder in a private corporation clearly has an interest in its contracts; and if the city cannot make a contract with the officer himself, it cannot make it with a corporation in which such officer is a stockholder."

The charter does not, in so many words, say that a contract made by the city shall be void if any member of the council or city official is interested in it; but it is void, nevertheless, inasmuch as the charter imposes a penalty for the making of such a contract.

"A statute which imposes a penalty upon an act by implication ordinarily prohibits such act. A penalty usually implies a prohibition, although there are no prohibitory words in the statute." Elliott on Contracts, § 666.

See, also, *In re Reidy's Estate,* 164 Mich. 167 (129 N. W. 196) ; *Case* v. *Johnson,* 91 Ind. 477; Bishop on Contracts (2d Ed.), § 471; Dillon on Municipal Corporations (5th Ed.), § 773, and cases cited.

And a contract made void by charter or by statute cannot be ratified—there is nothing to ratify—nor can any recovery be had upon it. The courts will leave the parties as it finds them; and if it is a contract of sale, an action cannot be maintained for the value of goods delivered under it. *Consolidated Coal Co.* v. *Board of Trustees, supra; Milford Borough* v. *Water Co.,* 124 Pa. 610 (17 Atl. 185, 3 L. R. A. 122) ; *Berka* v. *Woodward,* 125 Cal. 119 (57 Pac. 777, 45 L. R. A. 420, 73 Am. St. Rep. 31) ; *City of Ensley* v. *Hollingsworth & Co.,* 170 Ala. 396 (54 South. 95) ; *Nunemacher* v. *City of Louisville,* 98 Ky. 334 (32 S. W. 1091). Nor will the courts inquire whether the terms of the contract are fair or unfair. The purpose of the prohibition is not only to prevent fraud, but to cut off the opportunity for practicing it.

There can be no doubt that Mr. Rikerd was an officer of the city. The board of police and fire commissioners, in exercising control over the police and fire departments of the city, is performing very important governmental functions. And the fact that Mr. Rikerd cannot be charged personally with having violated the charter, inasmuch as he had no knowledge of the sale

or delivery of the lumber, does not determine the case. Every contract with the city is made void when a member of the common council or an officer of the city has an interest in it, whether such member of the council or city official has or has not, himself, been guilty of procuring the contract.

The decree is affirmed, with costs to the complainant.

PERSON, KUHN, STONE, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.