[Cr. No. 183]

STATE OF NORTH DAKOTA, Plaintiff, v. B. E. ROBINSON, Defendant.

(2 NW(2d) 183, 140 ALR 332)

Opinion filed January 27, 1942

*Alvin C. Strutz,* Attorney General, *William R. Pearce,* Assistant Attorney General, and *George S. Register,* State's Attorney, for the state.

*Sullivans, Fleck & Higgins,* for defendant.

MORRIS, J. This proceeding comes to us upon a certification from the district court of Burleigh county; Hon. G. Grimson, Special Judge presiding. The certification was made under the provisions

of §§ 7849b1–3, 1925 Supplement to Compiled Laws. The matter involves a criminal prosecution for an alleged violation of § 9829, ND Compiled Laws 1913, which reads as follows: "Officer's fraud. Every public officer, being authorized to sell or lease any property or make any contract in his official capacity, who voluntarily becomes interested individually in such sale, lease or contract, directly or indirectly, is guilty of a misdemeanor."

The defendant was brought to trial upon an amended information charging that he violated the above section by voluntarily becoming interested individually in a contract entered into by the defendant in his official capacity as Motor Vehicle Registrar of the state of North Dakota, whereby there was furnished to the Motor Vehicle Registration Department of the state of North Dakota, certain gasoline, grease and motor oil and automobile parts of the aggregate value of $31.40, placed in or on automobiles belonging to that department, at Washburn in McLean county, and that thereafter the defendant in Burleigh county approved payment for said items from the funds appropriated to said department by preparing and approving, in his capacity as registrar, a voucher in favor of the Washburn Motor Company to which he certified as creditor in the capacity of secretary of the Washburn Motor Company, a corporation, in which he was and is individually interested. It is further charged that he thus became individually interested in the contract to pay for the merchandise so furnished.

Pursuant to the provisions of chapter 132, ND Session Laws 1939, the State furnished the defendant a bill of particulars in which it is stated:

"2. That at and during all the times mentioned in the said amended criminal information the above named Defendant was and still is a stockholder and officer, to wit: secretary of Washburn Motor Company, a corporation, with its sole place of business located in Washburn, in McLean County, State of North Dakota;

"3. That a portion of the merchandise consisting of gasoline, grease, oil and automobile parts mentioned in the said amended criminal information was furnished to the above named Defendant himself between the said dates of April 5th and April 21, 1941, and put in or on

an automobile. belonging to the Department of Motor Vehicle Registration of the State of North Dakota at the place of business of the said Washburn Motor Company in McLean County, North Dakota, while the said Defendant was personally present; that such portion of said merchandise was ordered and authorized to be put in and upon said automobile personally by said Defendant at such time ·and place;

"4. That the remaining portion of such merchandise described in Plaintiff's amended criminal information was furnished to and put in or upon an automobile belonging to said Department at Washburn, North Dakota, upon the request of an employee of said Motor Vehicle Registration Department, which said employee had previously at Bismarck, North Dakota, been authorized and directed by the above named Defendant to purchase such merchandise and take delivery thereof at Washburn, North Dakota;

"5. That on the 20th day of May, 1941, the Defendant at Bismarck, North Dakota, did prepare or cause to be prepared a voucher in favor of Washburn Motor Company covering all of the said purchases hereinbefore referred to, both those mentioned in Paragraphs 3 and 4 herein, totaling the sum of $31.40; which said voucher was thereupon certified to as required by law by the said B. E. Robinson in behalf of the said Washburn Motor Company as creditor, and which voucher was also approved in behalf of said Department by the said Defendant as such Registrar and thereupon submitted to the proper authorities of the State of North Dakota with the request that the same be paid, and that the said voucher was thereafter duly paid from funds appropriated to the said Motor Vehicle Registration Department."

The first question certified to us is

## QUESTION NUMBER I.

"Whether the fact that the defendant, B. E. Robinson, was at all times in question a stockholder in and secretary of the Washburn Motor Company makes the defendant 'interested individually' within the meaning of section 9829 in contracts of such corporation."

The answer to this question must be found in the construction to be placed upon § 9829. ND Comp. Laws 1913, which we have quoted at the

beginning of this opinion. Similar laws appear in many states and also in other legislative enactments in this state. The constructions of similar statutes given by other courts are valuable and by analogy and reasoning, aid us materially in the solution of the problem at hand. The neat question is whether or not a stockholder and officer of a corporation is individually interested directly or indirectly in a contract which he makes as an official of the state with a corporation in which he is a stockholder.

First we turn our attention to the consideration of whether a stockholder may be considered to be interested directly or indirectly in such a contract as the statute forbids. Leaving, for the moment, the effect to be given to the word "individually," we find that Wisconsin has a statute forbidding an officer of that state or its subdivisions from acquiring "any pecuniary interest, directly or indirectly, present or prospective, absolute or conditional, in any way or manner," in any contract made by him in his official capacity. The statute provides a criminal punishment and also makes a contract, entered into in violation thereof absolutely void. This statute came before the supreme court of Wisconsin in Reetz v. Kitch, 230 Wis 1, 283 NW 348. The case involved an action to restrain the disbursement of city funds in connection with the purchase of a building from a bank in which the city clerk was a stockholder. In discussing the relationship between the city clerk and the bank, the court said: "He was a stockholder in the bank, and this court has held many times that the stockholder in a corporation has such an interest as will disqualify him from acting on behalf of a city or other governmental unit. Bissell Lumber Co. v. Northwestern Casualty & S. Co. 189 Wis 343, 207 NW 697; Swiss v. United States Nat. Bank, 196 Wis 171, 218 NW 842; Washington County v. Groth, 198 Wis 56, 223 NW 575." See also State v. Bennett, 213 Wis 456, 252 NW 298. Thus, it appears that the supreme court of Wisconsin has reached the conclusion that a stockholder in a corporation is interested at least indirectly in a contract between the corporation in which he owns stock and a municipality of which he is an official.

In Ferle v. Lansing, 189 Mich 501, 155 NW 591, LRA1917C 1096, the court had under consideration a suit to enjoin the payment of a bill for lumber sold to the city of Lansing. At the time of the sale, a stock-

holder of the lumber company and its vice-president and manager, was a member of the board of police and fire commissioners. The case for the injunction rested on the application of a provision in the city charter forbidding a city official from being interested in any contract with the city. It was held that the sale amounted to a contract and that the stockholder was interested therein in violation of the charter provision. The court said: "It is true that this prohibition in the charter prevents the city from making purchases of a corporation of which any officer of the city, or member of its council, is an officer or stockholder. This was determined, on principle, in Consolidated Coal Co. v. Michigan Employment Inst. 164 Mich 235, 129 NW 193. A sale is a contract, and a form of contract in which the evil sought to be remedied by the charter is most frequently apparent. And, as said in Hardy v. Gainesville, 121 Ga 327, 48 SE 921: 'A stockholder in a private corporation clearly has an interest in its contracts; and if the city cannot make a contract with the officer himself, it cannot make it with a corporation in which such officer is a stockholder.' "

The case of Northport v. Northport Townsite Co. 27 Wash 543, 68 P 204, was a civil action involving the validity of a contract which the court found to have been entered into in violation of a statute which provided that: "No officer of such city shall be interested, directly or indirectly, in any contract with such city, or with any of the officers thereof, in their official capacity, or in doing any work or furnishing any supplies for the use of such city or its officers in their official capacity." The statute also made any claim for compensation based upon such a contract void and made willful violation of the statute a misdemeanor and a ground for removal from office. In holding the contract void, the court said: "It would seem that the interest of a stockholder of a corporation brings such stockholder within the reason of the rule prohibiting an officer from being interested in the city's business."

Among other cases of similar import to those from which we have just quoted are Drake v. Elizabeth, 69 NJL 190, 54 A 248; State, Stroud, Prosecutor, v. Consumers' Water Co. 56 NJL 422, 28 A 578; Santa Ana Water Co. v. San Buenaventura (CC) 65 F 323; Consolidated Coal Co. v. Michigan Employment Inst. 164 Mich 235, 129 NW 193.

In the question under consideration, it appears that the defendant is not only a stockholder but is also secretary of the corporation with which the contract was made. While an officer of a corporation may not always be a stockholder therein but may be a mere employee it nevertheless appears that where both capacities are present the interest is more apparent. In Grand Island Gas Co. v. West, 28 Neb 852, 45 NW 242, a member of the city council was also a stockholder in and secretary and treasurer of the corporation that made the contract with the city. This contract was held void as being violative of a statute that prohibited all officers of a city from being directly or indirectly interested in any contract or agreement to which the city or anyone for its benefit is a party.

In Norbeck & N. Co. v. State, 32 SD 189, 142 NW 847, Ann. Cas 1916A, 229, the court held that a contract between the state and a corporation was void because a member of the legislature that enacted the law under which the contract was made was a president and stockholder of the corporation. This determination was reached because of a provision in the South Dakota Constitution providing that no member of the legislature shall be interested directly or indirectly in any contract with the state, authorized by a law passed during the term for which that member was elected.

Other cases holding contracts void under similar circumstances are Milford v. Milford Water Co. 124 Pa 610, 17 A 185, 3 LRA 122; Antigo Water Co. v. Antigo, 144 Wis 156, 128 NW 888; Noble v. Davison, 177 Ind 19, 96 NE 325; Opinion of Justices, 108 Me 545, 82 A 90; Bellaire Goblet Co. v. Findlay, 5 Ohio CC 418, 3 Ohio CD 205.

It is asserted by the defendant that the cases cited by the state are civil actions and that criminal statutes must be construed more strictly against the state than civil statutes. We have no quarrel with this principle of statutory construction; however it does not dispose of the cases which we have heretofore cited as being without weight in determining the question before us. While those cases seek to invoke a civil remedy rather than a criminal penalty, some are nevertheless based upon criminal statutes.

In Douglas v. Pittman, 239 Ky 548, 39 SW(2d) 979, certain mem-

bers of a city board of education were ousted from office because they became interested in contracts with and claims against the board of which they were members. The statute does not use the word "individually" but the court does use it in disposing of the contention of one of the defendants. The court says: "The appellant Douglas concedes that R. E. Day and William Bethel had vacated their offices. He argues, however, that he does not come within the statutory provisions, as he was not individually interested in the sales by the Victory Motor Company to the board of education; that he received no profits upon the sale made by the Victory Motor Company. We fail to see the distinction contended for by appellant. It cannot be denied that he is interested in any business done by the Victory Motor Company. He is president of the company; he owns one-third of the stock; surely he is directly interested in the welfare of that company, and its welfare is wholly dependent upon its business. We are therefore of the opinion, under this statute, he likewise vacated his office as a member of the board of education."

The foregoing authorities are pursuasive that statutes, such as the one we have under consideration, when they prohibit an officer from becoming interested directly or indirectly in a contract made by him in his official capacity, apply where the interest of the officer is that of a substantial stockholder and officer in the corporation with which he makes the contract.

We now come to the defendant's strenuous contention that the use of the word "individually" in the statute now before us must be construed to indicate an exception to the rule that we have just set forth. It is asserted that the stockholder's interest in a corporation does not give him individual or personal interest in the contracts of the corporation. He argues that the legislature could not have intended to make an officer criminally liable for transactions with corporations in which he had but a small interest represented perhaps by one share of stock out of many. That argument is not without weight as a matter of sound common sense. On the other hand, if the statute permits a public officer who operates his private business through the convenient medium of a corporation in which he is a major stockholder to make a contract which the statute prohibits to the individual, it opens a con-

venient way for evasion. He would be permitted to make contracts with a corporation from which he drew a material personal benefit and thus the purpose of the statute would be set at naught.

The only place that we have been able to find where a statute of similar import to ours uses the word "individually" is in the State of New York. Section 1868 of the Penal Code of New York provides that: "A public officer or school officer, who is authorized to sell or lease any property, or to make any contract in his official capacity, or to take part in making any such sale, lease or contract, who voluntarily becomes interested individually in such sale, lease or contract, directly or indirectly, except in cases where such sale, lease or contract, or payment under the same, is subject to audit or approval by the commissioner of education, is guilty of a misdemeanor." We find no case in that state wherein the word "individually" is held to have resulted in giving the statute a different construction than that given to similar statutes in other states where the word "individually" has been omitted. In Schenectady Illuminating Co. v. Schenectady County, 88 Misc 226, 151 NYS 830, it was held that a contract made by a county board of supervisors for the necessary purchase of Mazda lamps at their fair market value, with a corporation of which a member of the board was a stockholder, officer and director, was illegal under the statute above quoted. That case was affirmed in 166 App Div 758, 151 NYS 1012. In that opinion it is said of the stockholder in question: "He has, however, no substantial financial interest in that company, being the owner of only one share of stock. The stock of the company is owned by the General Electric Company, except that the directors of the relator are each the owner of one share of stock; this single share having been issued to each of these individuals for the purpose of qualifying each to act as a director. The relator, the Schenectady Illuminating Company, sold certain electric lamps to the board of supervisors for use in the courthouse. The price charged for the lamps was regular, ordinary, and proper. The total amount of the bill was only $7.44, and the lamps were sound and perfect and worth the money. No fraud is charged in the transaction; no intimation of undue influence or political pull. The question arises, however, whether the sale from the relator to the county under these circumstances was legal. . . .

I doubt whether the section ((Penal Law), § 1868) was violated. Carr knew nothing about the making of the contract, and therefore did not become voluntarily interested. But if this contract should be declared void for other reasons, it is not necessary to hold that Carr, acting as a supervisor, knowingly made this contract, or that he committed a crime." It thus appears that the appellate division affirmed the result of the holding of the supreme court as to the illegality of the contract but indicated that the member of the board of supervisors was not criminally liable.

In State v. Kuehnle, 85 NJL 220, 88 A 1085, Ann Cas 1916A, 69, the court had before it an indictment that charged the violation of a criminal statute prohibiting public officers therein mentioned from being directly or indirectly concerned in any agreement or contract for any improvement to be contracted or made for the public use or at public expense. In discussing the interest of a stockholder as a public officer, the court said: "That the owner of a controlling interest in a corporation may often be as much concerned in its contracts as if they were his own is obvious, and although the interest of the holder of a single share in a great corporation like the United States Steel Corporation or the Pennsylvania Railroad may be so slight as to be imperceptible, no harm can come from holding that he, too, is concerned within the meaning of the statute, since he cannot be criminally liable unless there is a corrupt intent. Upon the proof of the corrupt intent, the extent of the stockholder's interest becomes important, and may be controlling."

We are unimpressed by the argument that the word "individually" must be construed so as to exclude from consideration under the statute an interest in a contract which an officer and stockholder may have in the contract of a corporation. Webster's New International Dictionary gives this definition of "individually" "as an individual or person; personally; as, this affair affects me individually."

The interest contemplated by the statute may be either direct or indirect but it must be an interest that accrues to the officer personally and not in a representative capacity such as that of receiver, trustee or administrator. The interest of a stockholder in a corporation is a personal interest. Gains or losses of the corporation may redound to the

interest of the stockholder personally. If his interest in the corporation is substantial, it undoubtedly comes within the purview of the statute even though it may accrue through the holding of stock. On the other hand, we do not imply that the holding of one share of stock in a large corporation makes an officer criminally liable in every instance wherein he makes a contract with that corporation. Criminal liability must depend upon evidence as to interest other than the bare existence of the relationship of a stockholder in a corporation. The interest made criminal by the statute is a question of fact that does not depend entirely upon the relationship that a stockholder bears to the corporation in which he owns a share of stock.

The relationship of an officer in a corporation raises a similar question of fact. An officer may be a mere employee or he may have a nominal interest growing out of the ownership of a share of stock which is a necessary qualification to hold office under the by-laws of many corporations. This was the situation in Schenectady Illuminating Co. v. Schenectady County, supra. Yonkers Bus v. Maltbie, 260 App Div 893, 23 NYS(2d) 87, was a civil action involving the validity of a contract under a statute different from the one involved in Schenectady Illuminating Co. v. Schenectady County, supra. However, after citing that case, the court went on to say:

"The general welfare and prosperity of the company of an officer may be an 'interest' therein. By the words of the statute, Second Class Cities Law, § 19, the public officer is prohibited from having an interest 'directly or indirectly' in any contract. If Alderman Slater was in fact merely a nominal officer of the respondent Suburban Bus Co., Inc., and had no interest whatever in the progress or prosperity or welfare of the company and received and expected to receive no money, as it is contended by this corporation, I suppose that the ordinance would be valid.

"Concededly he held the office of president of the corporation. If, as it is contended by petitioner in the affidavits in support of the petition, his interest was more than nominal, and he devoted his time and energy to the progress of the corporation, and actively participated in its affairs, it could readily be found he had an interest in it within the prohibition of the statute, although, perchance, he was not a stockholder

and, during his occupation of public office, received no salary or other money.

"If it were found, upon a plenary inquiry into the facts, that a public officer acted in such a manner for and on behalf of a corporation that it would reasonably follow that money or other valuable consideration would follow in exchange for his activity, the ordinance complained of could be held invalid. Absence of financial return during the period of such public service is not a complete answer to the sweeping prohibition of the statute.

"An interest 'directly or indirectly' in a contract may include an interest the fruition of which is postponed or implicit as well as one which is immediate and in stated terms. This seems to be the intent fairly expressed in the statute.

"All of this, I think, presents an issue of fact which must be tried and cannot be determined adequately upon the affidavits presented."

From a careful study of the foregoing authority we have reached the conclusion that the mere fact that B. E. Robinson was, at all times in question, a stockholder and secretary of the Washburn Motor Company, does not make him interested individually, directly or indirectly in the contracts of that corporation within the meaning of § 9829. The interest contemplated by that section cannot be determined as a legal proposition upon the relationship to the corporation of stockholder and secretary. Question No. I involves a question of fact that must be determined by a jury under proper instructions.

Question No. II, as set forth in these proceedings: "Whether the purchase of commodities or supplies necessary and essential to operation of vehicles used by employees of the Motor Vehicle Department in travelling, and owned by such department, come(s) within the terms of § 9829."

We consider this question in the light of the allegations of the amended information and the bill of particulars wherein it is alleged that the commodities or supplies in question were purchased for the Motor Vehicle Department of the State of North Dakota by the defendant in his official capacity and paid for out of state funds appropriated to that department. No statute has been pointed out to us that in any way supports the defendant's contention that commodities purchased

474

upon the State's credit or with state funds for use by the employees of the Motor Vehicle Department in travelling come within any different category than other supplies and commodities required by the various departments of the state in the conduct of official business. Our answer to question No. 2 is, yes.

It is argued that gasoline and oil for state cars may be purchased by employees and paid for by them. Later they may bill the state and thus secure reimbursement and that such a transaction does not come within the provisions of § 9829. Assuming this statement to be true, it in no way affects the legality or illegality of the transactions involved in this case. The information and the bill of particulars charge that a crime was committed by doing certain acts. If those acts were illegal, the fact that the same result might have been procured in a wholly different and lawful manner does not impart legality. The legality of the acts involved must be determined by what was done— not what might have been done.

The last three questions certified to us are as follows:

## QUESTION NUMBER III.

Whether the signing for the Washburn Motor Company of a state voucher or the approval of the same as Motor Vehicle Registrar for payment and the presentation of the same to the proper state officials, all done by the defendant in Burleigh County, North Dakota, and which voucher represents the purchase price of commodities previously ordered and received by the defendant in McLean County, North Dakota, for and on behalf of his department, and delivered to him there constitutes a violation of § 9829 in Burleigh County, North Dakota.

## QUESTION NUMBER IV.

Whether the signing by the defendant in Burleigh County, North Dakota of a state voucher on behalf of the Washburn Motor Company and approving the same for payment as Motor Vehicle Registrar and presenting such voucher to the proper officers of the State of North Dakota for payment, all performed in Burleigh County, North Dakota, and which voucher was for items ordered and received by an employee of the Motor Vehicle Registration Department at Washburn, North

Dakota, pursuant to the previous express approval and direction of the Motor Vehicle Registrar, constitutes a violation of § 9829 Comp. Laws 1913.

## QUESTION NUMBER V.

Whether the direction of the defendant to any employee of his department in Burleigh County, North Dakota to thereafter order and receive commodities for the department of Motor Vehicle Registration of the Washburn Motor Company at Washburn, North Dakota which commodities were ordered delivered and accepted in McLean County, constitutes a violation in Burleigh County of § 9829.

These questions all pertain to the venue or proper place of trial of the action. The state argues that the information and bill of particulars set forth a crime that was committed in part in Burleigh county and in part in McLean county and that the district court of either county has jurisdiction to try the case under the provisions of § 10,505, ND Comp. Laws 1913, which reads as follows: "When a crime or public offense is committed in part in one county or judicial subdivision and in part in another, or the acts or effects thereof, constituting or requisite to the consummation of the offense occur in two or more counties or judicial subdivisions, the jurisdiction is in either or any of said counties or judicial subdivisions."

The queries presented to us were apparently framed with the idea of determining whether or not this section was applicable.

Question No. 3 deals with the effect of the signing of the voucher and presentation of it to the proper state officials. Question No. 4 deals with practically the same situation except that the voucher is claimed to have been presented for items ordered and received by an employee pursuant to the previous express approval and direction of the defendant. The fifth question deals with the direction of the defendant to the employee of his department to order and receive a part of the merchandise in question.

We have been unable to discover any authority upon the question of venue of the prosecution of a crime such as is charged in the information and none has been cited by either party. Despite that fact, we do not find the question here presented to be at all difficult. It is readily disposed of under the general law applicable to the venue and juris-

diction of criminal actions. The basic question is where was the crime committed. If it was committed in McLean county the district court of Burleigh county has no jurisdiction. If it was committed in both counties, then under § 10,505, either county has jurisdiction. As a general rule it may be said that a crime is committed in a county when the criminal act, its object and purpose, is completed within that county. Ex parte Lucas, 33 Okla Crim Rep 407, 243 P 990; United States v. Thayer, 209 US 39, 52 L ed 673, 28 S Ct 426; State v. Tummons, 225 Mo App 429, 37 SW(2d) 499. An offense of which courts in two or more counties have not jurisdiction must be tried in the county in which it was committed. Runyon v. Morrow, 192 Ky 785, 234 SW 304, 19 ALR 632.

A crime may be committed through an agent. The fact that the agent may have received his instructions from the principal in a county other than that in which the criminal act took place does not in the absence of a special statute to that effect give jurisdiction of the crime to the courts of the county in which the instructions were given. While those instructions may be evidence properly admissible at the trial they do not fix the venue of the action. In Girdley v. State, 161 Tenn 177, 29 SW(2d) 255, it is held that when an offense is committed through an innocent agent, the venue is in the county where the acts were done by the agent without reference to the whereabouts of the principal.

The act that is made criminal in so far as this case is concerned is the making of a contract contrary to the provisions of the statute. If the contract is illegal it becomes so because of the defendant's interest therein. That interest, as charged by the information and bill of particulars, arises out of the relationship of officer and stockholder that the defendant bears to the Washburn Motor Company. The company's office and place of business are located in McLean county. It is charged that the merchandise in question was furnished to and placed in or upon automobiles belonging to the Department of Motor Vehicle Registration at the company's place of business in McLean county. Part of the merchandise was furnished to the defendant personally and part of it to an employee of the Department who had been authorized and directed at Bismarck in Burleigh county to make such purchases.

We must bear in mind that the gist of the crime charged is the making

of a contract in which the defendant is interested. The contract was made at the place of business of the Washburn Motor Company. It was completed when the merchandise was delivered to the defendant or to the employee of his department. If the Washburn Motor Company became entitled to payment at all, it became entitled to such payment immediately upon delivery of the merchandise. The State was thereupon obligd to pay for it. Chapter 177, ND Session Laws 1935, authorizes expenditures for necessary expenses from the Motor Vehicle Registration fund. Specific appropriations for the expenses of the department were made by chapter 74, ND Session Laws 1939. In the interest of orderly procedure and safeguarding public funds, persons having claims against the state must submit vouchers and have the claims audited and approved by the State Auditing Board. This procedure, however, does not fix the primary liability of the State to pay for purchases of merchandise made by its authorized officers and employees. The statutory requirements as to the submission and approval of vouchers does not determine the validity of the claim or the ultimate right of the claimant to payment. The liability of the state exists separate and apart from any action of the auditing board. The crime charged was complete when the contract was complete. The completion of the contract was marked by the delivery of the merchandise. It was both contracted for and delivered in McLean county. There rests the venue. The fact that the voucher that resulted in payment was approved by the defendant in Burleigh county, and presented to the state auditing board, and ordered paid in Burleigh county, does not alter that situation. It follows that the crime charged, if committed at all, was committed in McLean county and that the District Court of Burleigh county is without jurisdiction to try the case. Questions three, four and five are answered in the negative.

BURKE, NUESSLE, and CHRISTIANSON, JJ., concur.

BURR, Ch. J. (concurring in part and dissenting in part). I agree with that part of the opinion which defines the term "interested. individually," as used in § 9829 of the Compiled Laws. I believe our determination should be that the question, as certified to us, cannot be answered "Yes" or "No," as this issue is always a question of fact for the jury to determine. Many cases may arise where the relationship set

forth in the question does not in itself alone make the officer "interested individually" in the specific contract under investigation.

In the light of the determination of question No. 1, the answers to questions 3 and 4 are "not necessarily so," or words to that effect, the issues presented thereby being always a question of fact.

I agree that the answer to question No. 5 is "No," as the question shows clearly that if any crime be set forth in the information, the venue is not in Burleigh county.

I disagree with the holding of the court that question No. 2 must be answered in the affirmative. Section 9829 of the Compiled Laws provides that "Every public officer, being authorized to . . . make any contract in his official capacity, who voluntarily becomes interested individually in such . . . contract, directly or indirectly, is guilty of a misdemeanor."

The majority answers this question, "Yes," categorically. To me it seems clear that such question cannot be answered "Yes" explicitly. The question taken by itself is limited to acts of employees, and does not include acts of the defendant. How can it be said that employees of the Motor Vehicle Department, by purchasing merchandise from a corporation in which the defendant is a stockholder, and of which he is the secretary, are making such contracts as are contemplated by the terms of § 9829? How can it be said that such contracts are the contracts of the defendant? These contracts are the contracts of the employees—not contracts of the public officer involved.

If we take into consideration the bill of particulars as a supplement to the information, in order to attempt an answer to question No. 2, even then we cannot answer "Yes" in all cases. Paragraph 3 of the bill of particulars deals with the acts of the defendant and the contract entered into by him personally. Our answer to question No. 1 shows that such a situation is always a question of fact, and, therefore, cannot be answered "Yes" or "No." Paragraph 4 of the bill of particulars shows that some of the merchandise was bought by an employee under the authorization and direction of the defendant. Again, while this may be a contract as covered by the situation involved in question No. 1, it is always a question of fact, and thus cannot be answered "Yes" or "No" by this court. Paragraph 5 of the bill of particulars shows the

method of preparing a voucher, but again, even if this shows a personal contract on the part of the defendant, it is determined by the answer given to question No. 1.

Thus if question No 2 be taken as it reads, contracts of the employees cannot be held to be contracts of the defendant. If taken in connection with the bill of particulars, so that it can be said the contracts of the employees are the contracts of the defendant, then we always have a question of fact for the jury, and thus cannot say definitely that the answer is "Yes" in all cases.

We must take the law of the state into consideration, as the majority of the court does. The defendant and the employees of the Motor Vehicle Department are reimbursed for their reasonable traveling expenses. This assumes that the contract in which these expenses are incurred is a contract made by them individually, and they are to be reimbursed by the Department if the amount be reasonable. If the defendant or the employees purchased gasoline and oil in the use of these cars on their official business, it is their bill and their debt. They are not authorized to charge this to the state. It is not a contract into which they enter in an official capacity. When the bill is audited, it may be disallowed because it is unreasonable, and no matter what they pay, they are only to be reimbursed for the reasonable expense. The fact that such an account is short-circuited, so that instead of paying out the cash and then presenting a bill therefor to the auditing board, a bill is presented in the name of the firm from which the purchase is made, does not change the situation. The account is still one for reasonable, necessary expense, for which reimbursement is to be made. Such a contract or purchase is not within the purview of § 9829 of the Compiled Laws.

If the information and the bill of particulars are to be considered in answering question No. 2, then the answer is too broad. In other words, under the facts in the case as set forth, and which are given as the basis for question No. 2, no specific answer can be returned to this question, for it is not all contracts for the purchase "of commodities or supplies necessary and essential to operation of vehicles used by employees of the Motor Vehicle Department in travelling, and owned by such Department," which come within the purview of § 9829. Some

clearly do not. Others involve questions of fact to be determined by the jury in the light of the rule laid down in dealing with question No. 1.

As has been intimated in argument and discussion,

"A question of law certified to this court 'must be clearly stated and not involve questions of fact or those of mixed law and fact, involving inferences of fact from particular facts stated in the certificate. It must be so distinctly stated that it can be answered and determined by this court without regard to other issues of law or of fact.' Stutsman County v. Dakota Trust Co. 45 ND 451, 178 NW 725. See also Malherek v. Fargo, 48 ND 1109, 189 NW 245.

"The statute (§ 7849b1 Supplement to Compiled Laws) contemplates the certification of definite and distinct propositions of law. The same rule applies in both civil and criminal cases. The quotation from Stutsman County v. Dakota Trust Co. supra, has been approved by this court in two criminal cases namely, State v. Fahn, 52 ND 134, 202 NW 130 and State v. Elkin, 68 ND 93, 277 NW 89. See also 3 Am Jur 759, appeal and error.

"The answer to question No. 2 could be either, yes or no, depending upon undisclosed facts. This question is too general and indefinite to be answered upon certification to this court under the provisions of § 7849b1–3, 1925 Supplement to Compiled Laws."