KANNER, Judge.
An indictment[1] was returned by a grand jury to the Circuit Court of Lake County against the respondent, Jack Hooten, also known as J. H. Hooten, under charge that he commited a misdemeanor within the purview of section 839.07, Florida Statutes, F.S.A., through selling to the county, for use as a county barn site, land in which he had an ownership interest while serving as a county commissioner. Since the offense charged was a misdemeanor, the indictment was certified by the circuit court to the county judge’s court, the court having jurisdiction for the trial of misdemeanors. Upon motion of the respondent, the county judge entered an order and judgment quashing the indictment and discharging the respondent. The state appealed to the circuit court, which affirmed the order and judgment; and the cause is now before this court for review on petition for writ of cer-tiorari.
Section 839.07, Florida Statutes, F.S.A., originally enacted as Chapter 4020, Laws of Florida, Acts of 1891, which has also been referred to as section 7470, Compiled General Laws of Florida, is the section under which the indictment was framed. It reads as follows:
“It is unlawful for any commissioner or other officer of this state, or for any officer elected or otherwise of any county or incorporated town or city therein, to bid or enter- into, or be in any way interested in, a contract for the working of any public road or street, the construction or building of any bridge, the erecting or building of any house, or for the performance of *338 any other public work in which the said officer was a party to the letting, and any person upon conviction thereof shall be punished by fine not exceeding five hundred dollars or imprisonment not exceeding one year.”
The essence of the respective rulings of the county judge and the circuit judge was that section 839.07 contains no language which prohibits sale of land by a public officer to the unit of government which he serves; that since the respondent is charged with the commission of a criminal offense, the statute under which the charge is laid must be strictly construed without supplied inferences; and that so construed, the statute provides no basis under which could be sustained the charge contained within the indictment.
Here the question is whether the sale by a county commissioner to the county of land in which the commissioner has an ownership interest, the land to be used for performance of a public work, constitutes a criminal offense under section 839.07. There has been no decision in Florida construing the statute in its criminal application, but there have been two principal civil cases construing and applying this section with reference to land purchases. It is these cases to which we shall first turn in considering the instant problem.
The earlier case is that of Town of Boca Raton v. Raulerson, 1933, 108 Fla. 376, 146 So. 576, 577, wherein the Supreme Court held that sale of realty by a town commissioner to the town, upon which realty was constructed a town hall, was void and the town could recover the full amount paid. The court concluded that transactions of this type fall into two categories, those which are illegal because against public policy and those which are void because prohibited by statute or founded on an act penalized by a statute. The transaction in the Boca Raton case was held to have fallen within the second category. It is well to quote some of the court’s telling language for holding the transaction void:
“This rule may, at a glance, seem a harsh one, because under it the town would be allowed to keep what it needs and uses and escape payment therefor, but the statute is upon the books for all to read and heed. It is a warning to those who become public officers that they may not take advantage of their position by dealing with themselves, and, being so warned, they enter upon such transactions at their peril * * * ”
Next is the case of City of Stuart v. Green, 1945, 156 Fla. 551, 23 So.2d 831, 834, which was a suit by the city to restrain action by the holder to enforce purchase money notes and to recover payments made, on the ground that the contract of purchase of land to be used as a baseball park, athletic field, and fair grounds was void because a city commissioner was a stockholder in the corporation which sold the land to the city. The court firmly adhered to its holding in Town of Boca Raton v. Raulerson, supra, by saying:
“It was there decided pointblank that sale to the city of property owned by a city commissioner was denounced by Section 7470, C.G.L., supra, and was void.”
Later in the opinion, the court reiterated, “ * * * we are not disposed to recede from the pronouncement in Town of Boca Raton v. Raulerson * * * ” There are later cases which subscribe to the principle enunciated in the Boca Raton and Stuart cases. See Watson v. City of New Smyrna Beach, Fla.1956, 85 So.2d 548, and Fruchtl v. Foley, Fla.1956, 84 So.2d 906.
In the Boca Raton and Stuart cases, the Supreme Court, while interpreting the statute with respect to civil actions concerning the sale of lands, recognized that the statute interpreted is a penal one.
Many of the states in the union have enacted similar statutes. We find that in other jurisdictions there has been a resort to civil cases for aid in construing terminology of statutes of that type as applied to *339 criminal charges. This is illustrated in the case of State v. Robinson, 1942, 71 N.D. 463, 2 N.W.2d 183, 188, 140 A.L.R. 332, wherein the court reviewed decisions from several jurisdictions which, although civil in nature, interpreted some phases of the language contained in such statutes. The court said:
“It is asserted by the defendant that the cases cited by the State are civil actions and that criminal statutes must be construed more strictly against the State than civil statutes. We have no quarrel with this principle of statutory construction, however, it does not dispose of the cases which we have heretofore cited as being without weight in determining the question before us. While those cases seek to invoke a civil remedy rather than a criminal penalty, some are nevertheless based upon criminal statutes.” (Emphasis supplied.)
Upon this same question of resort to civil cases, the case of People v. Deysher, 1934, 2 Cal .2d 141, 40 P.2d 259, 261, is also illustrative. The defendant was convicted pursuant to section 71 of California’s Penal Code which declared it to be a penal offense for a public officer to be “interested” in public contracts in a manner prohibited by law. Pointing out the lack of authorities on the issue considered, the California Supreme Court, on the appeal, stated:
“Neither the briefs nor our own investigation has disclosed any case deciding what facts sufficiently establish such an interest in a public contract as will subject an officer to punishment under said section 71 or similar statute. But aid can be obtained from civil cases considering the sufficiency of evidence to prove such an interest of an officer in a public contract as to invalidate it.”
With this prefatory comment, the court then cited and discussed several civil cases and concluded upon the basis of the decisions therein that the defendant had possessed a sufficient interest to have justified his conviction of violating section 71 of the Penal Code.
Thus we see that other jurisdictions, in dealing with a criminal charge, have resorted to civil cases within their own and other jurisdictions for aid in interpreting statutory provisions. In our own jurisdiction, as seen, we have the civil cases directly determining that sale by a public official of land which he owns or in which he is interested to the agency of which he is an official falls within the purview of the prohibitory provisions of the statute.
Unquestionably the rule is that penal statutes must be strictly construed. At the same time, however, they are not to be construed so strictly as to emasculate the statutes and defeat the obvious intention of the legislature. Haworth v. Chapman, 1933, 113 Fla. 591, 152 So. 663.
This court, in an opinion by Chief Judge Allen in the case of City of St. Petersburg v. Calbeck, Fla.App.1959, 114 So.2d 316, cited numerous authorities regarding the specificity of penal statutes, delineating the principles that the statute must be sufficiently explicit to prescribe the elements of the offense with reasonable certainty and make known to those to whom it applies what conduct on their part will render them liable for its penalties; that a statute which fulfills the above requirements is valid even though it is not confined to a definition of specific acts; and that statutory .language which conveys a definite warning as to proscribed conduct, when measured by common understanding and practices, satisfies due process of law.
The term “public works” has been defined as all fixed works constructed for public use, such as railways, docks, canals, waterworks, roads, and the like. Demeter Land Co. v. Florida Public Service Co., 1930, 99 Fla. 954, 128 So. 402, and 26 Fla.Jur., Public Works and Contracts, section 2, p. 533. *340 There is no contention that the purchase of the land for a county barn site was not for the performance of a public work for the county.
To restrict the provisions of section 839.07 so that they apply only to those public works which are spelled out would render the statute meaningless as regards any public works not definitely articulated. Yet, the term, public works, has come to have a defined meaning in the law and includes numerous types of projects. There are many recognized public work projects of equal or greater import and magnitude than those particularized in the statute here involved. Certainly, the words, “or be in any way interested in * * * the performance of any other public work,” were meant by the legislature to comprehend a variety of public works activities in which a public officer might seek to utilize his office for private gain.
In holding the indictment to be within the purview of the provisions of section 839.07, we believe this conclusion effectuates the object of the statute and serves as a remedy to prevent evil which could arise in the absence of a penal provision. This interpretation is consonant with the legislative intent to preclude a public officer from misuse of the powers of his office for his own profit, to prevent influenced decisions, and to effectuate the advancement and protection of the public good, which, in the final analysis, constitutes the basic underlying purpose of the statute.
The petition for writ of certiorari is granted, and accordingly, the order and judgment of the circuit court is quashed and the cause remanded with direction that the order and judgment of the county judge be reversed and set aside, for such further proceeding as is consistent with the views expressed in this opinion.
ALLEN, C. J., and SMITH, D. C., Associate Judge, concur.

. “In the Name and by Authority of the State of Florida:
“The Grand Jurors of the State of Florida, enquiring in .and for the body of the County of Lake upon their oaths do present that Jack Hooten, also known as J. H. Hooten, late of the County of Lake aforesaid, in the Circuit and State aforesaid, laborer, on the 4th day of February in the Year of Our Lord, One Thousand Nine Hundred and Fifty-seven with force and arms at and in the County of Lake aforesaid, unlawfully was then and there a County Commissioner of Lake County, Florida, representing District No. 3, upon the Board of County Commissioners, Lake County, Florida, and did make a motion to the Board of County Commissioners, Lake County, Florida, to purchase Lots 5 and 6, Block 20, Minneola, Lake County, Florida, for the purpose of a County Barn site, for the sum of $10,000.00, lawful money of the United States of America, while at said time he, the .said Jack Hooten, also known as J. H. Hooten, knowing of his interest, was interested in said Lots 5 and 6, by having an interest in said Lots 5 and 6, Block 20, Minneola, Lake Counts', Florida, and said County Commission, including County Commissioner Jack Hooten, also known as J. H. Hooten, did affirmatively vote to purchase said land and did purchase said Lots 5 and 6, Block 20, Minneola, Lake County, Florida, and as a result of said purchase said Jack Hooten, also known as J. H. Hoot-en, did receive the sum of $2,140.00, representing his interest in the above described purchase.
“Contrary to the Form of the Statute, in such cases made and provided, and against the peace and dignity of the State of Florida.”